ELLEN FLYNN *vs.* THE CANTON COMPANY OF
BALTIMORE.

*Action against the Occupant of a building in the City of Balti-
more, to recover damages for injuries resulting from a fall on
the ice formed on the Pavement adjoining such building—Article
42, sec. 157, of the Revised Ordinances of the City of Balti-
more.*

The appellant, while walking with ordinary care, slipped and fell upon ice
covering the pavement of a public street in the City of Baltimore, in front
of premises occupied by the appellees, and broke her arm. Snow having
been allowed to accumulate on the pavement, was melted by the sun, and
the water thus formed was frozen the night before the accident. The ap-
pellant could not see the ice, because of a slight covering of snow, which
had fallen during the night. Suit was brought to recover damages for the
injuries sustained in consequence of the fall. The action was grounded on
the neglect of the appellees, to comply with an ordinance of the City, which
made it the duty of owners or occupiers of property, to clear away snow
and ice from the pavements or sidewalks, contiguous to their premises,
*under a penalty of two dollars for every neglect, beside the expense* of clearing
the same away, under the direction of the police officers in the mode pro-
vided in the ordinance; and it was made the duty of the police officers to
have the snow and ice removed from the pavements, fronting the houses of
those persons who should neglect or refuse to remove the same, at the ex-
pense of the City in the first instance, to be afterwards recovered from the
person or persons so neglecting or refusing. HELD:

That the action would not lie; that the neglect of the defendants to perform
the duty or service imposed on them by the ordinance, did not render them
liable to a private action; that the only liability resting upon them, was
that imposed by the ordinance itself, namely, the prescribed fine or penalty
for each neglect, and the cost of removal in every instance of their refusal
or neglect.

While recognizing the well settled principle that whenever a party causes,
constructs, or creates a nuisance or obstruction in a public street or high-

Flynn *vs.* Canton Co. of Baltimore.

way, he is responsible in damages to any one who has received special injury in consequence thereof, the Court considered that in this case the nuisance, if such it were, was not caused or created by the act of the party sued. The ice, the occasion of the injury, was not on the property of the defendants, nor was it placed on the pavement through the slightest instrumentality or agency on their part; it was formed solely and exclusively by the action of the elements.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered the following prayers :

1. If the jury find from the evidence, that the defendant, on or about the 27th day of February, 1873, was, through its servants or agents, in possession of the premises known as the Canton Market, in the City of Baltimore, under a lease from the Mayor and City Council of Baltimore, and that appurtenant to said market on the front or side thereof, there is a pavement or public footway, and shall further find that said defendant while so possessed as aforesaid, failed and neglected to keep said pavement or footway free from ice or snow, but allowed the same to accumulate thereon in such a manner as greatly to obstruct, inconvenience and endanger the public in walking along or over said footway, contrary to an ordinance of the Mayor and City Council of Baltimore; and shall further find that the plaintiff, while exercising ordinary care and diligence on her part, received the injury complained of by falling on said ice or snow, then the plaintiff is entitled to recover.

2. If the jury find a verdict for the plaintiff in estimating the damages, they are to consider the health and condition of the plaintiff before the injury complained of, as compared with her present condition, in consequence of the said injury, and whether the said injury is in its nature permanent, and how far it is calculated to disable the

plaintiff from engaging in those employments for which, in the absence of said injury, she would have been qualified; and also the physical and mental suffering to which she was subjected by reason of said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has thus sustained.

The defendant prayed the Court to instruct the jury, that the evidence in this case is not legally sufficient to maintain the action, and the plaintiff is, therefore, not entitled to recover.

The Court (GAREY, J.,) rejected the prayers of the plaintiff, and granted the prayer of the defendant. The plaintiff excepted, and the verdict and judgment being against her, she appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER, ALVEY and ROBINSON, J.

*William A. Hammond,* for the appellant.

The ordinances of the Mayor and City Council of Baltimore, Art. 42, sec. 156, of the Baltimore City Code, 1869, provides, that it *shall be the duty* of every person or corporation to keep the pavements or sidewalks situate in front, rear or side of their tenements free from ice and every obstruction of whatever nature. This ordinance is strictly within the scope of the powers delegated to the Mayor and City Council by the charter of the city, to pass ordinances in reference to the prevention and removal of nuisances. *Public Local Laws, Art. 4, sec.* 797. And for the preservation of property and persons from danger. *Ibid., sec.* 32. That Act "clothed the corporate authorities, within the specified limits, with all the legislative power which the General Assembly could have exerted." *Harrison vs. Mayor, &c.,* 1 *Gill,* 264. The ordinance therefore became "a law." *Pub. L. L., Art. 4, sec.* 10. See also *Heland*

*vs. City of Lowell*, 3 *Allen*, 407 ; *Goddard, Petitioner, &c.*, 16 *Pick.*, 504 ; *Presb. Ch. vs. City of N. Y.*, 5 *Cow.*, 540 ; *City of St. Louis vs. Boffinger*, 19 *Mo.*, 15 ; *Taylor vs. City of Carondelet*, 22 *Mo.*, 105 ; *Hopkins vs. Mayor, &c., of Swansea*, 4 *Mees. & W.*, 638.

Even a contract contrary to an ordinance properly enacted is entirely void. *Jones vs. Firemen's Fund Insurance Company*, 2 *Daly*, (*N. Y.*,) 307 ; *Bell vs. Quin*, 2 *Sanford, S. C. Rep. (N. Y.,)* 146 ; *Milre vs. Davidson*, 5 *Martin La. (N. S.,)* 586 ; *Dillon on Mun. Corp.*, sec. 245 *and note.* The duty therefore cast upon the appellee by law to remove the ice and snow from its pavement, and if injury resulted from its neglect to perform this duty, it was liable in damages. *Shear. & Red. on Neg., p.* 395, sec. 345 ; *Duckett vs. Co. Com. of A. A. Co.*, 20 *Md.*, 468 ; *Wendell vs. Mayor, &c., of Troy*, 39 *Barb.*, 335.

The fact that the ordinance prescribes a fine or a penalty for non-compliance with its provisions, does not relieve the appellee of its common law liability, to answer in damages for any neglect of duty on its part, whereby injury results to an individual. *Couch vs. Steel*, 77 *E. C. L.*, (3 *El. & Bl.*,) 402 ; *Caswell vs. Worth*, 85 *E. C. L.*, (5 *El. & Bl.*,) 848 ; *Shear. & Red. on Neg.*, 643.

The appellee was a wrong-doer, (whether its sin was one of omission or commission could make no difference,) and it was therefore liable for any consequences flowing from its neglect or wrongful act. *Owings vs. Jones*, 9 *Md.*, 160 ; *B. & O. R. R. vs. State, use of Miller*, 29 *Md.*, 261. Whether there was negligence on the part of the appellee, in not complying with the provisions of the ordinance, and whether the injuries to the appellant were the result of that negligence, were questions for the jury, and there was ample evidence from which they might well have found the affirmative of both propositions. *B. & O. R. R. vs. Shipley*, 31 *Md.*, 368. The plaintiff's first prayer should therefore have been granted. *Mayor, &c., of Balt., vs. Marriott*, 9 *Md.*, 160.

*Arthur Geo. Brown*, for the appellee.

A householder is in no case responsible for personal injury, resulting from the collection of ice or snow from the operation of natural causes, on the sidewalk in front of premises occupied by him. *Kirby vs. Boylston Market Association*, 14 *Gray*, 249.

The duty to clear away such obstructions as ice and snow from the public streets of a city, rest upon the municipal corporation itself, whose highways they are—(*Mayor vs. Pendleton*, 15 *Md.*, 16,)—but injuries caused by the mere slipperiness of a pavement from smooth ice, which has been formed upon it by the action of the elements, furnish no ground of action against a city, much less against an individual householder. *Stanton vs. City of Springfield*, 12 *Allen*, 566; *Nason vs. City of Boston*, 14 *Allen*, 508; *Stone vs. Inhabitants of Hubbardston*, 100 *Mass.*, 56; *Gilbert vs. City of Roxbury*, 100 *Mass.*, 185; *Hubbard vs. Concord*, 35 *N. H.*, 68; *Landolt vs. City of Norwich*, 37 *Conn.*, 615; *Durkin vs. City of Troy*, 61 *Barb.*, 454; *Mosey vs. City of Troy, Ibid.*, 580; *Cooke vs. City of Milwaukee*, 24 *Wis.*, 270.

It is believed that no reported case can be found, (except the case of *Kirby vs. Boylston Market Association*, 14 *Gray*, 249,) in which, under similar circumstances, an action has been brought against the occupant of the premises in front of which personal injury has been sustained from a fall on ice.

A householder has no other or greater right in or to, or control over that part of the public street in front of his property, than any other part of the highways of the town. All the streets of a city are equally free to the general public, who at all times are entitled to the free and unobstructed use of every foot of them. 2 *Dillon Munic. Corp.*, (2d *Ed.*) secs. 520, 541.

It is the duty of the city authorities of Baltimore, (or the Board of Police Commissioners—*Alvater vs. Mayor*,

*&c.,* 31 *Md.,* 462,) to keep the public streets within its limits at all times free and fit for travel, and in the performance of this its duty, and as a part of its police power, it may require citizens to render appropriate aid. *Ex parte Goddard,* 16 *Pick.,* 504; *Union R. R. Co., vs. Mayor, &c., of Cambridge,* 11 *Allen,* 287; *Kirby vs. Boylston Market Asso.,* 14 *Gray,* 252; 1 *Dillon on Municip. Corp.,* (2d *Ed.*) *sec.* 327.

For a failure to obey the requirements of the ordinances, the city may fine the citizen, and so compel him to assist in carrying them out; but the passage of the ordinances does not shift the duty to clear away ice and snow from the corporation to the citizen; it remains still the city's duty to prevent and remove such obstructions in its streets, and for its failure to do so through its officers or by the enforced aid of its citizens, the city itself is alone responsible. *Mayor, &c., vs. Marriott,* 9 *Md.,* 160; *Mayor, &c., vs. Pendleton,* 15 *Md.,* 16; *Houck vs. Wachter,* 34 *Md.,* 265, 267, 273.

The facts stated in the record would not subject the appellee to an indictment for a nuisance; it is therefore not liable to respond in damages to the suit of the appellant. *County Commissioners vs. Duckett,* 20 *Md.,* 468, 477, 478, 481.

MILLER, J., delivered the opinion of the Court.

This is an action on the case by the appellant against the appellees, to recover damages for personal injuries sustained by the plaintiff, in consequence of slipping and falling upon ice covering the pavement of a public street in the city of Baltimore, in front of premises occupied by the defendants.

The proof shows that the plaintiff while on her way to church, on the morning of the 27th of February, 1873, slipped and fell upon a sheet of ice on the pavement or sidewalk of O'Donnell street, and by the fall, her right

arm was broken and permanently disabled; that she was walking at the time with ordinary care, and could not see the ice because of a slight covering of snow which fell during the preceding night; that the pavement where the accident happened was in front of the Canton Market House, then in the possession and occupation of the defendants, a body corporate, under a lease from the city. It was further in evidence that snow had fallen frequently from time to time during the winter, prior to the accident, and was permitted to remain and accumulate as it fell on this pavement; that the police officer on that beat had notified the defendants several times during January and February before the accident, to remove the ice and snow which had thus accumulated, but it had not been done, and the pavements around the market were never touched; that the snow was melted by the sun, and the water thus formed was frozen the night before the accident; and that the pavement was smooth and the ice formed in a smooth sheet over it.

The action is grounded on the neglect of the defendants to comply with an ordinance of the city, which made it the duty of owners or occupiers of property, to clear away snow and ice from the pavements or sidewalks contiguous to their premises. The argument, very ably presented, is that this was a duty cast by law upon the defendants, and if from their neglect to perform that duty, special injury has resulted to the plaintiff from the nuisance or obstruction thus suffered, or permitted to exist, they are liable in damages therefor. Like ordinances have been in force in Baltimore and other cities of the State for many years, and this is the first instance in which such an action has been brought against the property owner. This however, is no valid reason why the action should not be sustained, if it shall appear to be founded on well established legal principles. But the facts that it is a case of first impression in this State, and that it involves a question of very

great interest and importance to the inhabitants and property owners of the cities where such ordinances are in force, have induced the Court to give it a very careful consideration.

There is not in this State, as there is in many others, any statute providing that municipal corporations and county authorities, having the care and control of public streets, roads, and highways within their limits, shall keep the same in good repair so as to be safe and convenient for the passage of persons and property, and giving in express terms an action on the case to any person receiving injury in consequence of any obstruction or defect therein. Such actions against these corporate authorities have nevertheless been sustained by this Court, and it is important to notice the grounds upon which the liability is placed.

In *Marriott's Case*, 9 *Md.*, 160, a case very similar to the present, the action was against the municipal corporation, and the Court held that the provision in the charter of the city, that the Mayor and City Council "shall have full power and authority to enact and pass all laws and ordinances necessary to preserve the health of the city, and to prevent and remove nuisances" confers a power to be exercised for the public good, the exercise of which is not merely discretionary but imperative, and the words "power and authority" in such cases mean *duty* and *obligation;* that a disregard of the duty thus imposed rendered the corporation liable in damages, and that the city had not brought itself within the saving of having used reasonable diligence in removing the accumulation of ice which constituted the nuisance complained of, by the mere passage of ordinances providing for the removal of snow and ice from the pavements of the streets, but was bound to make vigorous efforts to enforce such ordinances in order to relieve itself from this obligation and liability.

In *Pendleton and Harlan's Case*, 15 *Md.*, 12, the action, also against the city corporation, was to recover damages

for injury to the plaintiff's horse, occasioned by falling into a trench that had been dug in the street. The trench was dug by the owner of a house for the purpose of introducing water into it from the main water pipe belonging to the city, and running along the centre of the street, and it had been filled up with earth and paving stones placed upon it, but in such manner that by reason of snow and wet, the ground was so soft that the horse sunk into it and thus sustained the injury. The arrangement, provided for by ordinances, by which lateral pipes are inserted into the main pipe was this: the officers of the corporation for an established charge paid to it, bore a hole in the main pipe, and the rest of the work is done by the persons into whose premises the water is to be conducted, the necessary excavation, filling up and paving being also done by the owner of the property. The Court held that the fact that these responsibilities were thus imposed on the property owner, did not relieve the corporation from the obligation under its charter, to keep the public highways within its limits, free from nuisances and in a condition to be safely travelled, and following *Marriott's Case,* affirmed the judgment against the city. Whether the plaintiffs could not have maintained their action against the owner of the house for the negligent manner in which he filled up the trench, or whether the city having paid the judgment had not a remedy over against him, as was held in *Chicago City vs. Robbins,* 2 *Black,* 418 and 4 *Wallace,* 657, are questions which were not raised or considered in that case.

Next in order is *Duckett's Case,* 20 *Md.,* 468. That was a suit against County Commissioners, (the first instance of such an action in this State) for negligently suffering a public county road to be in such bad repair as to be impassable with safety, whereby the plaintiff in travelling thereon with wagon and horses, and using due care, had one of his horses killed. The case was very carefully considered. The previous decisions of this Court bearing on

the subject and many authorities elsewhere were reviewed. The Court was there pressed with the decision of Chancellor KENT in *Bartlett vs. Crosier*, 17 *Johns.*, 439, in the course of which, that distinguished jurist expressed the opinion that commissioners of highways in New York were not liable to private suits for damages, occasioned by bad roads or broken bridges, because, among other reasons, the law of that State had not supplied them with the coercive power requisite to meet and sustain the enormous and dangerous responsibility which would be cast upon them if they were held liable to individuals to any extent and for any damage. The Court, whilst admitting the force of this reasoning, held it did not apply to the case before them, inasmuch as the law of this State had not only created the County Commissioners bodies corporate, with capacity to sue and be sued, and charged them with control over the county roads and bridges, but had also invested them with power to levy taxes for their repair and improvement, and to pay all debts expressly or impliedly contracted, thereby supplying them with ample means, and arming them with coercive power sufficient to meet and sustain all their liabilities, placing in fact all the resources of the county at their disposal, to enable them to perform their obligations, express or implied. They then say, "here is a concurrence of all the conditions necessary to constitute legal liability; a duty imposed by law, means and agents placed at their command to execute it, and capacity to sue and be sued."

Then follows *Altvater's Case*, 31 *Md.*, 462, which was also a suit against the municipal corporation. The plaintiff, whilst passing along Saratoga street, was struck by a sled in rapid motion, thrown down and seriously injured. At the time, and for weeks prior to the accident, a large crowd had daily congregated on this street and rendered travel on it inconvenient and dangerous from the speed and number of sleds used by them, thereby creating a

nuisance. The Court decided the corporation was not responsible, because by legislation subsequent to *Marriott's Case,* the Board of Police had been created, deriving their existence from and strictly within the jurisdiction of the State authority, and invested with the exclusive control of the entire police force of the city, whereby the city corporation was deprived of the power to enforce their ordinances respecting nuisances. Whilst the provision of the city charter on that subject still remained in force, it was made also the duty of this Police Board to prevent and remove nuisances, and they were armed with the power to perform that duty. The Court therefore held that under these circumstances the duties and obligations of the Mayor and City Council were qualified and limited by the provisions of the law creating the Police Board, and they say, "where the power and authority are conferred by the statute, the party possessing them becomes necessarily responsible in actions like this for their proper exercise; but it is equally true that in the absence of such power and authority there can be no such consequent obligation," and "it is but just that responsibility for the proper discharge of duty should result from the power to perform the duty."

From this review of our Maryland decisions on this subject, it is manifest the liability of these corporate authorities in actions like the present rests not simply upon the ground that a statute has imposed upon them a duty, but upon the further fact also that it has provided them with the means and clothed them with the power to enforce or discharge that duty. Is then liability to such an action cast upon the property owner by reason of neglect to perform the duty or service required of him by the ordinance in question? What is that ordinance? It provides that "it shall be *the duty* of each and every person, incorporated society, or public institution using or occupying in any manner, or for any purpose whatever,

any house, store, shop, stable or tenement of any kind, and of *persons having charge* of churches and public buildings of every description, and of *owners* of unoccupied houses and of unimproved lots, situate on any paved street, lane or alley in the city," within a certain prescribed time after the fall of any snow or formation of any ice, "to remove and clear away, or cause to be removed and cleared away, the same from the foot pavements fronting the respective" premises, "so used, occupied or owned by them, or under their charge, in such manner as not to obstruct the passage of the water in the gutters, *under a penalty of two dollars for every neglect beside the expense* of clearing the same away under the direction of the police officers, in the mode provided in the succeeding section," and that section provides that "it shall be *the duty* of the police officers to cause the snow and ice to be removed by the persons employed for the purpose of cleaning the streets, from the footways of the bridges within the city, and from the flag-stones placed at the several intersections of the streets, as also to remove the ice and other obstructions to the free passage of the water at the intersections of the several streets of the city, and to cause the snow and ice to be removed from the foot pavements fronting the houses, stores, stables, churches, public buildings, lots, or tenements of such persons as shall neglect or refuse to remove the same, at the expense of the city in the first instance, to be afterwards recovered from the person or persons so neglecting or refusing."

Unquestionably this ordinance is a valid exercise of the power conferred upon the city by its charter, and is operative to the extent and for the purpose contemplated by those who enacted it. It may even be further conceded, as the appellant's counsel insists, that it has the same effect within its limits and with respect to the persons upon whom it lawfully operates, that an Act of the Legislature has upon the citizens at large. But the question here is

what is its scope and effect? Does liability to a private action follow from neglect to perform the duty or service thus prescribed? In our judgment it does not. The whole design and effect of this ordinance, was to secure the proper application of whatever labor and means were necessary to discharge the obligation then resting upon the city to keep its streets in a condition to be safely travelled. The work enforced under it, and the expense of doing it when performed by the employees of the city, together with the fines or penalties for neglect which may be imposed and collected, relieves the city to that extent from charges to which it would be otherwise subjected. Stated in a different form, our view of the effect of this ordinance is this: at the time of its passage it was the duty of the city to remove snow and ice from the sidewalks of its streets, so as to render them safely passable. The city was then provided with the means and power to discharge that duty. In the exercise of that power, it saw fit to provide by ordinance that the owners and occupants of premises abutting the sidewalks, should either remove the snow and ice therefrom, or be charged with the cost of such removal if done by its own officers or employees, besides being subjected to a penalty for each neglect. The property owners were thereby made the *agents* of the city for that purpose, just as the police force was. The two are placed on the same footing with respect to the liability we are now considering. It is made *the duty* of the former to do it in the first instance, and *the duty* of the latter to cause it to be done in case of neglect or refusal by the former. If a private action for damages lies against the former by reason of neglect to discharge *the duty* imposed by this ordinance, it lies equally against the latter. If it lies against the latter, then every ordinance defining in similar terms *the duties* of police officers, street commissioners, and other officials, agents or employees of the city, subjects them to a like responsibility. We cannot

think such a result was ever contemplated by the framers of ordinances of this character. We find it supported by no adjudged case, and in our opinion it is not sustained by any sound legal principle. Again the persons upon whom this ordinance operates are provided with no means, and armed with no power adequate to meet the responsibility that would be thus imposed on them. They are required to perform this service for the benefit of the public, either by their own labor, or through their own private and unaided resources. The proposition contended for by the appellant would subject to the same liability not only resident owners and occupants of property, but *non-resident* owners of vacant lots and houses, and *persons having charge* of the courthouse, churches and all other public buildings in the city. The duty or service here required is for the benefit of the public, and in considertion of no private pecuniary gain to those upon whom it is imposed. It is not like the case where an individual is bound by a private statute under which he derives a benefit, or by a certain tenure to keep a road or bridge in repair, nor like the case of turnpike companies or other private corporations charged with the performance of certain duties by the Acts under which they are incorporated. In such cases the duty is perfect and binding at all times, and its neglect is followed by this responsibility, because it is founded on a valuable consideration or made the condition of the grant. Such being the nature of the duty required, and such being the character of the ordinance in question, we are of opinion the only liability resting upon the property owner is that which the ordinance itself imposes, viz: the prescribed fine or penalty for each neglect, and the cost of removal in every instance of his refusal or neglect. By enforcing these, every object the ordinance was intended to accomplish will be attained. The liability of the parties upon whom it operates extends no further, and against them an action like this cannot be maintained.

In so determining we recognize the well settled principle that whenever a party causes, constructs or creates a nuisance or obstruction in a public street or highway, he is responsible in damages to any one who has received special injury in consequence thereof. Nor do we controvert the doctrine of the case of *Robbins vs. Chicago City,* that if, in such case, the municipal corporation is made responsible for the injury, it has, unless it concurred in the wrong, a remedy over against the party immediately in default. We likewise accept the law so forcibly stated by our predecessors, in *Owings vs. Jones,* 9 *Md.,* 108. In that case the defendant, without complying with the requirements of the city ordinances on that subject, *opened a hole* in a street leading to a vault or sink, and kept such a weak and insufficient covering upon it that the plaintiff slipped and fell into the vault and sustained injury. For this wrongful and unlawful act the defendant was held responsible in the action, and in reply to the argument in his behalf, that the fact that he had not complied with the ordinances could *in no wise* affect him in the case, the Court said: "We think otherwise. The doing of an unlawful act subjects the doer to *every* consequence which flows from it. This is a principle of universal operation, and founded in good sense and public justice. He stands in a different light from one who does a legal act, but does it so imperfectly that it may occasion injury. In the one case there is a positive and reckless contempt and defiance of the commands of the law, and in the other, a mere carelessness, which, however culpable, is free from the charge of wilfulness." There is, however, as we think, a plain distinction between such cases and the one before us. Here the nuisance, if such it be, was not caused or created by the act of the party sued. The ice, the occasion of the injury, was not on the property of the defendants, nor was it placed on the pavement through the slightest instrumentality or agency on their part. It was not even formed from water

discharged or flowing from their premises. If from care-
lessness or negligence in the use or management of water,
or water-pipes *in their buildings or on their premises*, the
water from which the ice was formed, was suffered to escape
or flow from their premises into the street and over the
pavement, they would stand in a different position, because
they would then have participated in causing the nuisance,
or obstruction. But there is no such feature in this case.
Upon the facts in the record before us, the ice on which the
plaintiff fell was formed solely and exclusively by the action
of the elements.

Reference has also been made, in support of the appel-
lant's position, to several recent English decisions, only
two of which need be noticed.

The first is the case of *Crouch vs. Steel*, 3 *Ellis & Black-
burn*, 402. There, by an Act of Parliament, it was made
the duty of ship-owners to keep on board their ships a suf-
ficient supply of medicines suitable to accidents and dis-
eases arising on sea-voyages. A seaman who had suffered
special injury from neglect of this duty, brought an action
on the case for damages against the ship-owner, and the
Court of Queen's Bench held he was entitled to main-
tain it, notwithstanding the Act had provided a penalty
for such default, recoverable against the ship-owner at the
suit of any person. In the course of his judgment in that
case LORD CAMPBELL, C. J., said: "The Statute of *Westm.*
2, (1 *Stat.*, 13 *Ed., I.*) c. 50, gives a remedy by action on
the case to all who are aggrieved by the neglect of any
duty created by statute." That statute is not in force in
this State. *Kilty's Report of Statutes*, 23. But besides
this, the Act relied on in that case provided a benefit for
seamen as a class. It required ship-owners who derived
gain and profit in the prosecution of their private business
from the labor and services of seamen, to discharge a cer-
tain reasonable duty for the preservation of the health and
comfort of those in their employment, and upon this view

of the statute, we think the decision in that case is rested.

This appears from the citation by his Lordship of the just and reasonable doctrine laid down in *Com. Dig.* (*Action upon Statutes, F.,*) viz : "In every case where a statute enacts or prohibits a thing for the *benefit of a person,* he shall have a remedy upon the same statute for the thing enacted for his advantage, and for the recompense of a wrong done to him contrary to said law." The distinction between that Act and this ordinance is broad and obvious. The latter was not enacted for the benefit of the plaintiff, as an individual, or as one of a particular class, but for the public at large. She was not in the employment of the defendants, and they were deriving no advantages from her services or labor. It belongs to an entirely different class of legislation.

The other is the case of *Atkinson vs. Newcastle & Gateshead Water Works Company, Law Rep.,* 6 *Exchq.,* 404, decided in 1871. There the company, by a special Act of Parliament, acquired the right of taking lands, appropriating streams, &c., and were required to lay pipes, and supply all the inhabitants of the district within the limits of the Act, with water, at a rate which they were authorized to charge. By another section of the same Act it was made their duty to keep their pipes in which fire-plugs were fixed, charged with water at a certain pressure, and to allow all persons at all times to take and use such water for extinguishing fires without making compensation for the same. A penalty was also imposed for the non-performance of this duty. The plaintiff's house, situated within the limits, took fire, and, in consequence of an insufficient supply of water in these pipes, the fire could not be extinguished, and his house and other buildings were consumed. He then brought his action for damages against the company. The question whether he could maintain the suit was raised by demurrer to the declara-

tion, and the Court of Exchequer gave judgment in his favor. KELLY, C. B., rests his judgment on the case of *Couch vs. Steel*, and quotes that portion of the opinion of Lord CAMPBELL in which the Statute of *Westm.* 2 and the citations from *Comyn* are relied on. MARTIN, B., did not dissent, but said: "It appears extraordinary that this company should, without express words be made an insurance office for all Newcastle and Gateshead." BRAMWELL, B., said the case was decided by the authority of *Couch vs. Steel*, but he would have come to the same conclusion without it. "The statute," he says, "has imposed on the defendants this duty. They have undertaken this duty and have consented it should be put on them, in consideration, I suppose, of the benefits they derive from the powers conferred on them by the statute. Now when a duty is imposed on a person, it always supposes a correlative right in some one, either in the public or the individual. When it is in the public, the remedy is usually by indictment; but when the duty is imposed for the benefit of the individual, then, unless some peculiar and specific remedy is given to him by the same statute which creates the right, it seems to follow that he has the ordinary remedy by action. Is then this duty created in such a way as to confer the correlative right upon the public or on the individual? It is manifest that it is created in such a way as to confer the right, not upon any section of the public, but upon the individual. The public at large are not interested in extinguishing fires in the houses of individuals, but the individual is. Therefore, it seems to me to follow, that unless some compensation is given to him for the violation of his right, he is entitled to maintain an action at common law." And CLEASBY, B., says: "Under this Act of Parliament the defendants obtain great powers of taking lands, appropriating streams, &c., and are also entitled to charge certain rates for the water supplied. This is the consideration for which they are satisfied to enter into the corresponding

obligation imposed on them." These citations very clear-
ly show the grounds of that decision and the class of cases
to which the doctrine of *Couch vs. Steel* applies. It is
hardly necessary to observe that this case is wholly outside
of the reasoning of the learned Judges in that.

On the other hand, the only case discoverable by the
researches of counsel and our own, in which the very ques-
tion now before us has arisen and been adjudicated, is that
of *Kirby vs. Boylston Market Association*, 14 *Gray*, 249.
There the accident occurred in the city of Boston, in the
same way and from the same cause. The suit was against
the property owner, and the same ordinance was in force,
and there was the same neglect on the part of the defen-
dant. The Court held the action would not lie against
the property owner, and that the remedy for all damages
sustained in this way, is exclusively against the inhabi-
tants of the city in their corporate capacity. We have
therefore the high authority of that case in support of our
judgment in this.

Having thus determined the question of liability, it is
wholly unnecessary to examine the rulings upon the prayers
to ascertain whether there is any error in them which
would warrant a reversal if the action could be sustained.
No injury has resulted to the appellant from such errors if
any exist.

*Judgment affirmed.*

(Decided 9th June, 1874.)