## GEORGE E. GRANT *vs.* THE SLATER MILL AND POWER COMPANY.

A local act of the legislature affecting the city of Providence provided that " every building already built or hereafter to be erected, in which twenty five or more operatives are employed in any of the stories above the second story, shall be provided with proper and sufficient, strong and durable, metallic fire escapes, or stairways constructed as required by this act, unless exempted therefrom by the inspector of buildings, which shall be kept in good repair by the owner of such building, and no person shall at any time place any incumbrance upon any such fire escapes."

Other sections of the act provided remedies as follows:

"Any person violating any provision of this act wherein no penalty is herein otherwise pre-scribed shall be fined twenty dollars for every violation thereof, and shall be fined not ex-ceeding twenty dollars for each day's continuance of the said violation after the service of the warrant issued upon the first complaint.

"The Supreme Court in term time, or any justice thereof in vacation, may restrain by in-junction any violation of this act, and may, according to the course of equity, secure the fulfilment and execution of the provisions thereof."

The chief engineer of the fire department was charged with executing the provisions of the act.

*Held*, that the scheme of the act was to secure safe structures as a police measure and for the general safety.

*Held*, further, that it was not the scheme of the act to create any duty which could be made the subject of an action by individuals, and that no remedy in favor of individuals beyond what is expressly given in the act should be implied for mere neglect to perform the duties created by the act.

Hence, when one employed as an operative in a building subject to the act was compelled by a fire to jump from an upper window and thereby suffered injuries, there being no fire escape on the building, and brought trespass on the case against the owner of the build-ing to recover damages for his injuries, alleging the owner's violation of the duties im-posed by the act:

*Held*, on demurrer to the declaration, that the action could not be maintained.

*Aldrich* v. *Howard*, 7 R. I. 199, distinguished.

*Couch* v. *Steel*, 3 El. & B. 402, discussed.

TRESPASS ON THE CASE.    On demurrer to the declaration.

The plaintiff's declaration stated that the defendant corpora-tion owned and rented a building in which he was employed as an operative; that the defendant neglected to comply with the pro-visions of Pub. Laws R. I. cap. 688, of April 12, 1878, although subject to these provisions, in consequence of which the plaintiff was compelled by a conflagration in the building to leap from a window in an upper story in order to save his life; that his leg was fractured in the leap, and amputation became necessary. The defendant demurred generally to the declaration.

So much of cap. 688 as is involved in the case is recited in the opinion of the court.

*Charles Hart, Benjamin T. Eames & Stephen A. Cooke, Jun.,* in support of the demurrer.

*Henry J. Spooner, Augustus S. Miller & Arthur L. Brown, contra.*

1. Where a statute imposes a duty for the benefit of particular persons or classes, an action on the case lies against the violator for special injuries caused by the violation: and the imposition of a penalty for the public offence does not affect the right of private

redress. *Heeney* v. *Sprague*, 11 R. I. 456 ; *Willy* v. *Mulledy*, 78 N. Y. 310 ; *Parker* v. *Barnard*, 135 Mass. 116 ; *Aldrich* v. *Howard*, 7 R. I. 199 ; Cooley on Torts, 653–658, and cases cited ; *Caswell* v. *Worth*, 5 El. & Bl. 849, 855 ; *Britton* v. *Great Western Cotton Co.* L. R. 7 Exch. 130 ; Brown's Legal Maxims, \*194, \*195.

2. Where precautionary rules are prescribed by statute for the protection of individuals, a failure to observe such rules is negligence *per se.* Every person while violating an express statute is a wrong doer, and as such is *ex necessitate* negligent in the eye of the law. *Jetter* v. *N. Y. & Harlem R. R. Co.* 2 Abb. Ct. App. Decis. 458, 464 ; 2 Thompson on Negligence, 1232, § 5.

*March* 1, 1884. DURFEE, C. J. This is Case to recover damages for injuries to the plaintiff caused by a destructive fire, which occurred November 21, 1882, in a building belonging to the defendant corporation, in which the plaintiff was employed as an operative. The action is founded on Public Laws R. I. cap. 688, § 23, of April 12, 1878, entitled, "An Act in relation to buildings in the city of Providence, and for other purposes." Section 23 is as follows, to wit :

" SECT. 23. Every building already built, or hereafter to be erected, in which twenty five or more operatives are employed in any of the stories above the second story, shall be provided with proper and sufficient, strong and durable, metallic fire escapes, or stairways constructed as required by this act, unless exempted therefrom by the inspector of buildings, which shall be kept in good repair by the owner of such building, and no person shall at any time place any incumbrance upon any such fire escapes."

The declaration avers that the building which was burnt was four stories high, and that more than twenty five operatives were employed in each of the two upper stories. The declaration also alleges that said third and fourth stories were rented for workshops for manufacturing purposes by the corporation ; that the operatives were employed by the tenants ; that the corporation rented the said stories knowing there were more than twenty five operatives employed in each of them ; that it derived great gains from the renting thereof, and that it thereby became subject to the duties imposed by the act. The corporation demurs to the declaration and contends that it is not liable to the action.

The question raised is one of great difficulty, as the question of civil liability is apt to be under such a statute. Cooley on Torts, 650, 651. The act expressly gives two remedies. Section 37 [1] provides that any person violating any provision of the act, wherein no other penalty is prescribed, shall be fined twenty dollars for every violation, and not exceeding twenty dollars for every day's continuance of the violation after service of warrant in the first complaint. The same section also provides that the Supreme Court may restrain by injunction any violation of the act, and may, according to the course of equity, secure the fulfilment and execution of the provisions thereof. The fines, when recovered, are directed to be paid into the city treasury. If the remedy by fine were the only remedy given, the inference would be, as decided in *Aldrich* v. *Howard*, 7 R. I. 199, that it was intended only as punishment for the public offence, and the remedy by action on the case in favor of persons specially injured, if such remedy were proper, would not be excluded. But in this respect the case at bar differs from *Aldrich* v. *Howard*, for in the case at bar there is the remedy by suit in equity, which is not purely a public remedy. The question, therefore, is whether two remedies being given, one of which is not necessarily solely for the public, it is not to be presumed that they were intended to be the only remedies. The familiar rule is, where a new right is created or a new duty imposed by statute, there, if a remedy be given by the same statute for its violation or nonfulfilment, the remedy given is exclusive. Is this rule inapplicable to the case at bar ? Or, to put the question in another form, is the case at bar an exception to the rule ? If it be, it is because the remedy in equity, being purely preven-

---

[1] As follows:

" Any person violating any provision of this act wherein no penalty is herein otherwise prescribed shall be fined twenty dollars for every violation thereof, and shall be fined not exceeding twenty dollars for each day's continuance of the said violation after the service of the warrant issued upon the first complaint.

" The Supreme Court in term time, or any justice thereof in vacation, may restrain by injunction any violation of this act, and may, according to the course of equity, secure the fulfilment and execution of the provisions thereof.

" Fines recovered for the violation of any of the provisions of this act shall be paid into the city treasury " (*i. e.* of the city of Providence).

tive, is no remedy for an injury already incurred. The answer to
that is, if the preventive remedy had been resorted to in season,
no injury would have been incurred. We are not prepared to say
that the answer is entirely satisfactory, nor are we prepared to say
that a statute might not be enacted, especially if it were enacted
simply for the benefit of particular persons, under which the rem-
edy in equity would be so clearly inadequate that it could not be
presumed to have been intended to exclude the common law rem-
edy by action on the case. It is evident, however, that the act
here was designed primarily as a police regulation, and only inci-
dentally, if at all, for the benefit of particular persons or classes
of persons. It is when there is or may be a combination of both
purposes that the difficulty arises. In such a case, says Judge
Cooley, the question of civil liability for neglect of duty can only
be determined by a careful consideration of the statute. Cooley
on Torts, 681. This, too, is the doctrine enunciated in *Atkinson*
v. *Newcastle Waterworks Co*. L. R. 2 Exch. Div. 441. There an
act incorporating a company for the purpose of supplying a town
with water gave certain powers and imposed certain duties, among
which was the duty of keeping a number of fire plugs, so called,
always charged for service in case of fire. The company neglected
to keep the fire plugs charged, and the plaintiff's house, situated
near one of them, was destroyed by fire. He sued the company
for damages, alleging that he had lost his house in consequence
of the neglect. The act gave no civil remedy, but prescribed
penalties. Some of the penalties were purely public, the penalty
for neglect to keep the fire plugs charged being such. Forfeitures
of forty shillings a day were, however, given to rate payers enti-
tled to water for neglect to supply them. The court held that the
company was liable to individuals only for these forfeitures, and
consequently not liable to them at all for neglecting to keep the
fire plugs charged. The judges, Cairns, L. C., Cockburn, C. J.,
and Brett, L. J., all of them doubted the correctness of the rule
laid down in *Couch* v. *Steel*, 3 El. & B. 402, namely, that wherever
a statutory duty is created, any person who can show that he
has sustained injuries from the non performance of that duty can
bring an action for damages against the person on whom the duty
is imposed. Lord Cairns expressed the opinion that the question

of liability must, to a great extent, "depend on the purview of
the legislature in the particular statute and the language which
they have there employed." The authority of the case as a prece-
dent, however, is qualified by the fact that the act there was a pri-
vate act, "in the nature of a legislative bargain," and the court
considered it to be entitled to a stricter interpretation on that ac-
count. Nevertheless the case is very instructive, for the real pith
of it is this : that the legislature had expressed itself on the sub-
ject of remedies, giving a limited remedy to individuals, and that
therefore no other remedy in favor of them could be implied.
The same reasoning is applicable to the case at bar ; for here the
legislature has expressed itself on the subject of remedies, and
given an equitable remedy which is applicable in favor of individ-
uals as well as of the public. Shall we say that still another rem-
edy may be implied, or shall we hold to the maxim, *Expressum
facit cessare tacitum.*

An examination of our act discloses peculiarities which ought
not to be disregarded. The act was passed by the General As-
sembly on the last day of its January session, 1878, and went into
effect ten days after its passage. It is difficult to believe that
the General Assembly could have expected that all the buildings
within the purview of section 23 could be furnished with fire es-
capes or stairways, as required by the act, within so short a time,
or could have intended that, if not furnished, their owners should
be liable civilly as well as criminally for not furnishing them.
Again, section 23 declares that the fire escapes and stairways
shall be furnished, but does not declare by whom they shall be
furnished ; it only declares that they shall be kept in repair by
the owner. If a building be let, why should the owner rather
than the lessee be required to furnish the fire escape, when it is
the lessee who creates the necessity for it by employing twenty
five or more operatives in some story above the second? It might
be plausibly argued that the matter was purposely left uncertain,
so that the liability to the duty might be determined and enforced
in equity. The uncertainty on this point affords an argument,
to say the least, that no civil liability was intended except such as
could be enforced by the equitable remedy provided by the stat-
ute ; for certainly the General Assembly would have made clear

who is to perform the duty if it had meant to have the neglect of it entail so incalculable a liability.   Further, it will be observed that the duty does not attach unless there are at least twenty five operatives employed in some story above the second.   Now if the owner be subject to the duty, even when the building is let, the lessee of an upper story, employing less than twenty five operatives there, has it in his power, by adding to the number, to expose the owner to this tremendous liability ; and unless notice be necessary, which, if the liability exist, is extremely doubtful, to say the least, he may expose him at any time without notice of the exposure.   It cannot be supposed that the General Assembly intended this.   The plaintiff contends that the duty was imposed particularly for the benefit of the operatives, and that, therefore, if any operative be injured by the neglect of it, he ought to have his action for damages for his injury.   This view, however, is not so clear as at first blush it seems.   Undoubtedly if there be a fire escape on a building where there are operatives, they will have a right to use it in case of fire ; and so, we apprehend, will any other person who happens to be there, as good a right as the operatives, which he would not have if the fire escapes were required *particularly* for the operatives.   If in a building six stories high there were twenty five operatives in the third story, making the fire escape necessary under the act, the fire escape we think, if it is for the owner to furnish it, would have to go to the top, if the building was occupied to the top, though there were not so many as twenty five in either of the higher stories.   Moroever, the inspector of buildings has a right to exempt any building from the operation of section 23 though it would otherwise be subject to it.   It seems improbable that the inspector would have this power if the duty was imposed particularly for the benefit of the operatives.   The inference is that the General Assembly regarded the duty as a duty to the public, and therefore empowered the inspector, as the representative of the public, to remit or exact it.   Section 6 of the act charges the inspector with the duty of executing its provisions.[1]

---

1  As follows :

SECT. 6. The chief engineer of the fire department shall, by virtue of his office, be the inspector of buildings in the city of Providence, and is charged

Section 23 is only one of a multitude of provisions contained in the act in regard to buildings and their construction in the city of Providence. The obvious purpose was to secure good, safe, and durable houses, as a measure of police, for the general security. We do not discover any indications of regard for particular persons or classes of persons, except the ambiguous indication which we have already considered. The act is local, and therefore not to be extended by construction further than the well established canons require. Evidently the inspector of buildings was mainly relied on to carry it into effect. The remedy by penal prosecution and the remedy in equity are clearly his only weapons. Undoubtedly the remedy in equity is available in a proper case to individuals. It seems to us that further than this, to quote the language of Lord Cairns, " It was no part of the scheme of this act to create any duty which was to become the subject of an action at the suit of individuals," and that, therefore, no remedy for individuals, beyond that which is expressly given, should be implied for any mere neglect of the duties imposed by the act. We do not consider that in so holding we are overruling the decision of this court in *Aldrich* v. *Howard*, 7 R. I. 199; for there no remedy whatever was given which was available for individuals, and, moreover, the action was not for any mere neglect of duty, but for a transgres-

with the duty of executing the provisions of this act, and may depute such duties hereunder to be performed by such of the assistant engineers of his department as he may deem proper. He shall keep a record of his doings; report all violations of this act to the city solicitor for prosecution ; and shall annually, and as much oftener as he may be required by the city council, make return to said council of his doings hereunder.

" The inspector of buildings shall examine all buildings in the course of erection, alteration, or repair, as often as practicable, and shall make a record of all violations of this act, together with the street and number where such violations are found, the name of the owner, lessee, occupants, architect, and master mechanic, and all other matters relative thereto.

" The said inspector shall examine all buildings reported dangerous or damaged by fire or accident, and make a record of such examinations, including the nature and amount of such damage, with the name of the street and number of the building, the name of the owner, lessee, and for what purpose occupied, and, in case of fire, the probable origin thereof ; he shall examine all buildings under application to raise, enlarge, alter, or build upon, and make a record of the condition of the same."

sion which made the building complained of illegal, and so a standing nuisance from which the plaintiff was suffering a continuing injury. The court in its decision in *Aldrich* v. *Howard*, following *Couch* v. *Steel*, laid down the law more broadly than was necessary for the decision, and more broadly, too, than would now be sustained by the English courts, unless the comments on *Couch* v. *Steel*, made by Lord Cairns and Lord Cockburn in *Atkinson* v. *Newcastle Waterworks Co.* are very misleading. See, also, Addison on Torts, 67 ; *Stevens* v. *Jeacocke*, 11 Q. B. N. S. 731, 741 ; *Flynn* v. *Canton Company of Baltimore*, 40 Md. 312 ; *Heeney* v. *Sprague*, 11 R. I. 456.                    *Demurrer sustained.*