ANNA FAY AND JOHN FAY, PLAINTIFFS-RESPONDENTS, v. CITY OF TRENTON, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

. Submitted October 25, 1940—Decided January 28, 1941.

For the plaintiffs-respondents, *Frank I. Casey.*

For the defendant-appellant, *Louis Josephson.*

The opinion of the court was delivered by

CASE, J.   The appeal is from a judgment of $2,500 for Anna Fay and $500 for John Fay, husband of Anna Fay, entered upon a jury verdict in the Mercer County Circuit Court against the city of Trenton.   The suit was to recover damages for the injuries suffered by the female plaintiff in stepping into a meter box in a public sidewalk near the curb. The city of Trenton grounds its appeal in the refusal of the trial judge to grant either a nonsuit or a direction of verdict in favor of the defendant when thereunto moved; and these grounds may be resolved into the single question of whether or not there was evidence in support of plaintiff's case sufficient to go to the jury.

There was testimony which directly or by legitimate inferences drawn therefrom would sustain factual findings that:

The city of Trenton has a municipal water distribution service and as part thereof maintains metal meter boxes beneath the sidewalks, the lids thereof being flush with the surface. The boxes are so equipped that the lids thereof may be locked, and it is the practice of the water department employes always to have a key with them to unlock and remove the lid and on reading the meter to replace and lock the lid. When the boxes are locked, they may not be opened without a key. One such box is in the sidewalk in front of 549 North Clinton avenue, and the meter therein contained is to measure the quantity of water delivered on private sale. Mrs. Fay, while walking across the sidewalk from a store door to her car, parked at the curb, stepped on the side of the lid. Before she stepped upon it, the lid was in its place, but with the pressure of her weight it tilted sidewise letting her foot into the meter box and throwing her to the ground. A passerby pushed the lid back into position. When a water department employe answered the telephone summons to the spot, the box was not locked. There is a confusion of dates in the testimony, but it is apparent that this visit was made immediately following the accident; appellant's brief places the visit from twenty to thirty minutes after the occurrence and states that it was made upon notification by the plaintiff of the accident. Duplicates of the box and lid were, under stipulation, brought before the trial court and submitted to the view and inspection of the jury; the key, the process of locking and unlocking and the security, or lack of it, in the lid when in position without being locked were made manifest to the trial court but not upon the written record. The device is not before us. The employe, whose duty it was to read that particular meter and to replace and lock the lid, testified as to the approximate date when he made the reading last preceding the accident but does not remember what he did with respect to closing the apparatus.

The defendant, confronted at the trial with the proposition that, having proved that it had removed the lid for inspection, did not prove that it had thereafter locked the same, rested upon the theory that it had later produced testimony proving that it made no difference whether the device was

locked or unlocked; that the lid, by reason of its shape and weight, was, when in position, secure.

It is inconsistent with the defense interposed at the trial to make any assumption contrary to the proposition that if the box had been locked such an incident as befell Mrs. Fay could not have happened. The danger of a trap in the sidewalk is obvious. The duty of using reasonable care to prevent the box from becoming a trap was upon the city, and it recognized that duty in the asserted practice of its employes to lock the box after they had made their readings. We think that the jury could find, from the proofs and their inferences, that the city had opened, and had not thereafter securely fastened, the box. Certainly the jury had grounds for finding that the lid was not locked when Mrs. Fay stepped upon it. With regard to the immovability of the lid when in position, even though not locked, we think that that, too, was a jury question, particularly as the entire apparatus was exhibited to and operated before the jury.

The service of distributing water to the city's inhabitants, for a price, is the exercise of a private or proprietary function by the municipality and is governed by the same rules as apply to private corporations. *Lehigh Valley Railroad Co.* v. *Jersey City,* 103 *N. J. L.* 574; *affirmed,* 104 *Id.* 437; *Harper* v. *City of East Orange,* 105 *Id.* 193; *Allas* v. *Rumson,* 115 *Id.* 593. It was said in *Young* v. *National Bank of New Jersey,* 118 *Id.* 171, with respect to a private corporation:

"The construction of the airway with the grating, flush with the sidewalk, was not a nuisance *per se* but was a thing the adjacent owner might do subject to the right of free and safe passage of the public over and along every part of the sidewalk. However, the owner, in making such use of the way was required to do so by such a method of construction as not to create a nuisance but having done this was under the further legal duty to exercise reasonable care to keep the structure safe for the use of the public."

In the present case the essential element lies not so much in whether an obstruction, lawful when installed, had, through use or abuse by the public or through some other factor of deterioration, come into a condition of nuisance, thus involv-

ing the issue of notice, as in whether the city, had, in making use of the fixture, exercised commensurate care to leave it in a safe condition. In *Cochran* v. *Public Service Electric Co.*, 97 *N. J. L.* 480, Mr. Justice Swayze, speaking for this court, said of a safety isle constructed by the city of Newark in a public street that the safety isle constituted such an obstruction that if it was not properly lighted it might become a nuisance and that if the city did not provide proper lighting it would be liable for resulting damage on the ground of having committed a positive misfeasance, as in *Hart* v. *Freeholders of Union,* 57 *Id.* 90. On this theory it may be that a failure to maintain such concurrent precautions as were reasonably necessary to demarcate the meter box from a nuisance would be referrable to the original installation as a positive misfeasance. But it is clear, we think, inasmuch as the city occupied the same legal status as a private corporation and had installed, in the public way, an object which was not permanently fast and closed but which, to permit periodic inspection by the city in its commercial enterprise, was fitted with a device for locking and unlocking, uncovering and recovering, the city was under a duty to use reasonable care to restore the box to a condition of security after it had opened up the same and to keep the lid locked to the box if that be found, factually, a necessary adjunct to reasonable care in keeping the sidewalk safe for the use of pedestrians. Whether or not the city had used reasonable care was, we think, a fact question on which the evidence, although slight, was sufficient to go to the jury.

The judgment below will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Dear, Wells, WolfsKeil, Rafferty, Hague, JJ.    14.

*For reversal*—None.