14 N.J. Super. 142 (1951)
81 A.2d 416
REID DEVELOPMENT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
TOWNSHIP OF PARSIPPANY-TROY HILLS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 9, 1951.
*143 Mr. William J. McCormack, attorney for the plaintiff.
Mr. John H. Grossman, attorney for the defendants.
COLIE, J.S.C.
The plaintiff corporation is the owner of vacant land on both sides of Fairway Place in the Township of Parsippany-Troy Hills. Fairway Place is a partially-developed street shown on map of Lake Intervale Corporation, which map was approved by the township and filed in the county clerk's office of Morris County. On May 31, 1950, the plaintiff applied to the township committee requesting it to extend the water main on Fairway Place for 600 feet. At its regular meeting on June 6, 1950, the application of the plaintiff for an extension of the water main came up but no action was taken. On June 14, 1950, the plaintiff was notified that its request for an extension would not be granted. On July 12, 1950, an application for an extension of water mains for 2,110 feet was granted to Radiant Builders, Inc., upon condition that all water revenues derived from taps along the extension be collected by the township and that 75 per cent thereof be returned to Radiant Builders, Inc., for a maximum of ten years or until the sum advanced by Radiant Builders, Inc., i.e., $3,951.35 was repaid, and if not fully repaid within the ten-year period, that Radiant Builders, Inc., relinquish its right to receive the balance. The township *144 retained 25 per cent of the revenues to cover maintenance and pumping charges to the extension granted.
Extensions of water mains, varying from approximately 400 to 1,600 feet, have been made both before and after the denial of, or non-action on, the plaintiff's application. It is contended that these established "usual terms and conditions" upon which extensions would be made. The evidence is that each application was granted or denied upon a study of each and that there were no "usual terms and conditions" followed as a criterion.
On June 14, 1950, a letter signed "Township Committee by W.P. Stephenson, Township Clerk" was sent to the plaintiff. It reads in part:
"In order to benefit the Township by having your development built up in 100 foot lots * * * we are willing to reduce your improvement costs by supplying all the labor for installing whatever mains, hydrants, fittings, etc. are needed on your land for a water system; and by rebating to you over a period of years out of water rental received from your parcels fronting on the said water system thus installed on your land the cost of the materials needed in such system  providing you revise your map in 100 foot frontage lots approved by the Planning Board."
The plaintiff filed an amended complaint in lieu of prerogative writ, seeking to compel the township to "take such steps as may be necessary to furnish the plaintiff with water extensions, under the usual terms and conditions." The township's answer was, in the main, a general denial of the complaint and a separate defense that the complaint failed to state a claim upon which relief could be granted because it sought to compel the performance by the municipality of a governmental function.
Thereafter, the plaintiff moved to strike the aforesaid separate defense and for summary judgment in its favor. The motion was denied and the matter came on for trial.
The pretrial order in this case limited the issues to two: (1) is the installation of an extension of water mains in a municipally-owned and operated water system the exercise *145 of a governmental or proprietary act; and (2) if the latter, was the refusal to grant the application for the extension an abuse of discretion on the part of the township.
There appears to be no decision in this State precisely applicable to this case. In Lehigh Valley R.R. Co. v. Jersey City, 103 N.J.L. 574 (Sup. Ct. 1927); affirmed O.B., 104 N.J.L. 437 (E. & A. 1928), the Supreme Court held that a municipality has two classes of powers:
"1. Legislative and governmental by virtue of which it exercises a governmental and police power and controls its people; and
2. Proprietary and business by which it acts and contracts for the private advantage of itself and its inhabitants. In the exercise of the proprietary and business powers the municipality is governed by the same rules as control an individual or business corporation under like circumstances."
The court then went on to say: "The providing of water for extinguishing fires and electricity for lighting streets and public places are governmental functions, while the distribution of water and furnishing of electricity to its inhabitants, for a price, is the exercise of a private or proprietary function by the municipality, and is governed by the same rules as apply to private corporations." This case recognizes a clear distinction between the providing of water for fire protection as a governmental function and its distribution as a proprietary function. In the cited case the question at issue was whether the charge to an owner or occupant of lands for water was a tax or not and the holding of the court was that it was not a tax.
Somewhat later in Fay v. Trenton, 126 N.J.L. 52 (E. & A. 1941), citing Lehigh Valley R.R. Co. v. Jersey City, supra, the court said: "The service of distributing water to the city's inhabitants, for a price, is the exercise of a private or proprietary function by the municipality and is governed by the same rules as apply to private corporations." In 34 Am. Jur., Mandamus, sec. 199, page 970, the rule is stated as follows:
"Ordinarily, a municipality or quasi municipality, such as a district organized to supply its inhabitants with water, gas, etc., is not bound *146 to furnish a supply to everyone that demands it, regardless of the expense involved and the returns which will result in so doing, especially where the statute provides that the rates shall be established sufficient to provide for such extensions and renewals as become necessary. As a general rule, the municipality which engages in furnishing water or other such supply to its inhabitants has a governmental discretion as to the limits to which it is advisable to extend its mains, and unless such discretion is abused, the decision of the municipality in the matter is determinative, and mandamus will not lie to control or review it. The writ has been refused when sought to compel a municipality or a water district to extend its water system or mains, or to compel a municipality to extend its sewer system."
An annotation in 45 A.L.R. 829 holds generally to the same effect and cites as authority Lawrence v. Richards, 88 A. 92 (Sup. Jud. Ct. of Maine, 1913). In that case there was involved a water district, a creature of the statute, or, as described in the opinion, a quasi-municipal corporation. The question arose in that case as to whether the members of the water district did or did not have discretion as to the extension of a water main, the petitioner in that case contending that they did not. As to this the court said: "If this contention has real merit, the consequence is that the trustees, acting for the district, are legally bound to supply water to all inhabitants, no matter how large the cost of the undertaking, now (nor) how small the revenue, and no matter how ruinous and destructive the result might be to the financial ability of the district to carry on its operations." The court held that discretion vested in the trustees and that the petitioner had no vested legal right to have the water main extended to his house; that his only legal right is that the trustees shall exercise their discretion.
It is only proper to point out that in the cited case the court arrived at this decision by reason of section 10 of the statute which provided that the water rates established by the trustees should be such as to provide revenue "* * * for such extensions and renewals as may become necessary." In the instant case, there is no such statute.
It remains to consider whether or not in the exercise of the discretion which the court finds was vested in the *147 township committee, there was an abuse. On this phase of the case, the defendant municipality produced a sanitary consulting engineer, Mr. Lee T. Purcell, whose qualifications were adequately established. The gist of his testimony was that Parsippany-Troy Hills had no sewage system, and that each residence had its own manner of disposal, by cesspool or septic tank; that in his judgment, in view of the nature of the soil and its qualities of absorption, there would be created a distinct health hazard if residences were built on either side of Fairway Place on lots having an area of 5,000 feet; that proper sanitary facilities from the health hazard would require the building of houses upon lots having an area from 10,000 to 15,000 square feet. This evidence stands unchallenged and is dispositive in this court's opinion on the question of whether or not there was an abuse of discretion on the part of the township committee.
The court finds that the extension of a water main by a municipality is a governmental function; that it requires the exercise of a degree of discretion on the part of the municipality; that in the instant case that discretion was not abused and, consequently, judgment will go in favor of the defendants.