ENSOR, ET UX. *v.* ORTMAN, ET UX.

[No. 351, September Term, 1965.]

82

*Decided June 6, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and BARNES, JJ.

*R. Taylor McLean,* with whom were *Lawrence E. Ensor* and *Royston, Mueller, Thomas & McLean* on the brief, for appellants.

*Richard H. Lerch,* with whom were *Lerch & Huesman* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

Suit was instituted by John Bosley Ensor and his wife, Elizabeth A. Ensor, to recover for injuries sustained by the latter when she fell through the deck of the back porch of a house in which they lived, owned by and located on the farm of Mr. and Mrs. Edward F. Ortman, two of the defendants named in the declaration. They also sued, in the same declaration, Mr. and Mrs. Donald W. Ensor, from whom they had orally subleased the premises, and obtained a default judgment against them. The case was heard before a jury in the Circuit Court for Baltimore County, Judge Menchine presiding, and the jury awarded damages on inquisition against the Donald Ensors, and awarded the same damages against Edward F. Ortman (Ortman), the court having directed a verdict in favor of Mrs. Ortman at the close of the plaintiffs' case. Following the jury's verdict against him, Ortman filed a motion for a judgment n.o.v., which Judge Menchine granted. This appeal ensued, in which the sole question raised by the plaintiff-appellants is whether Mrs. Elizabeth Ensor was guilty of contributory negligence as a matter of law, the ground given by Judge Menchine for granting the judgment n.o.v.

For approximately seventeen months prior to April 6, 1963, the date of Mrs. Ensor's back porch accident, the plaintiffs had been living in the tenant house on the Ortman farm. During this time there was a written lease of most of the farm between the Ortmans, as landlords, and Mr. and Mrs. Donald Ensor, as tenants. Pursuant to the written lease with the Donald Ensors, Ortman undertook to make all external repairs of a structural nature to the tenant house; and Mr. and Mrs. Donald Ensor undertook to make the interior repairs.

In January 1963, defendant-appellee Ortman repaired the railing of the back porch of the tenant house which had given way under the weight of the plaintiffs' three year old son. At this time Ortman remarked to plaintiff Elizabeth Ensor (hereinafter referred to as Mrs. Ensor) that the porch was in bad condition and he stated that he would arrange to have some-

one repair it. He also called Mrs. Ensor's attention to the porch posts which had come loose, and the porch's tongue and groove flooring which he said looked "pretty bad." About one month later, Mrs. Ensor had a telephone conversation with Ortman in which she reminded him of the defective condition of the porch. In this conversation Ortman advised her to bring such matters of house repairs directly to his attention, as he did not always get messages from Donald Ensor.

Late in February 1963 the plaintiffs suspected that Ortman planned to sell the farm and, being anxious to know if they would have to find another place to live, they went to see him to inquire about this matter. Ortman told them that he was going to sell the farm, but that he planned to keep the tenant house and he would like them to remain in it and pay rent directly to him. At this time, Mr. Ensor, in Mrs. Ensor's presence, asked Ortman whether he would make repairs to the back porch and specifically called Ortman's attention to the buckling of the floor. Ortman said that he would make the repairs and in reliance upon this conversation the plaintiffs continued to live in the tenant house.

Toward the end of March of that same year, some of the porch's floor boards were blown loose during a strong windstorm. Plaintiff John Ensor immediately nailed down these loose boards and because "he wasn't a carpenter" he instructed his wife to call Ortman and request him to inspect the temporary repairs. Mrs. Ensor dutifully telephoned Ortman and was advised by the latter that he would inspect the porch before he went to work that day. Mrs. Ensor testified that she did not know whether Ortman inspected the repairs or not, but she did know that the porch flooring was not further repaired and it remained in the same defective condition as before the windstorm, more specifically, the buckled condition of the tongue and groove flooring persisted. Six days before the accident, Mrs. Ensor again phoned Ortman and lodged another complaint about the porch. During this conversation Ortman promised to engage a Mr. King to repair the porch, and to send him over the next day. The promise did not bring results and the floor remained in the same "buckling shape" until the time of the accident.

On April 6, 1963, (a careful reading of the record fails to disclose the hour or the lighting conditions then existing) Mrs. Ensor, while carrying three scatter rugs, stepped out on the back porch and fell. She described the accident as follows:

"Well, I was finishing my chores around the house, and I had changed my clothes to go grocery shopping, and I noticed that I had left approximately three scatter rugs lying, and they hadn't been shook out, so before I went, I picked up the rugs, and as I went out of the door, I had the inside door open, and that left the screen door to open, and as I opened the door and stepped out I really don't remember what actually happened. All I know is I saw boards scatter, and I remember I hit * * * these joists. When I regained my senses, my left leg was over the front part of the porch where the steps are, and my right leg was in a hole, and I was straddled, like, on a joist."

On cross-examination the following colloquy took place:

"Q. And I believe you said in answer to a question that you don't remember whether you took one step or two steps out on the porch when the accident happened? A. That's correct, I don't remember. All I know is, I stepped out and that is when it happened.

Q. * * * Did you look at the floorboard before you stepped on it? A. I don't normally look at it.

Q. So you didn't that time? A. No.

Q. That would be your best recollection? A. I know I was going out the same as I do any other time.

* * *

Q. So that your testimony and your recollection is that you didn't look at the floor of the porch before you stepped on it? A. No, because I wasn't accustomed to
* * *

Q. (By the Court) Now, I am not certain that I understand what you want the Court and the members of the jury to understand about what caused you to fall. What caused you to fall on the occasion of your fall? A. The porch, the boards on the porch surface scattered.

Q. (The Court) What do you mean scattered? A. They went out from under me. They'd go up in the air. They'd go in every direction, the ones that were missing.

Q. (The Court) Well, I am not sure what you mean when you say they scattered, they'd go in the air, and then I am not also very clear as to when this event occurred. Can you give me clarification on those two things? A. Yes sir. On April 6th, the day that I fell, is when the boards scattered when I stepped out onto the porch and my feet went out from under me, and this was what I would call the cause of my fall."

Mrs. Ensor further testified that after the accident she saw approximately five of the tongue and groove boards lying on the ground near the porch, and Mr. Ortman came up to the house about an hour afterwards and also observed the floor boards scattered about. He told her not to touch anything and that he would make the repairs. Eight days later he nailed the same boards back in place. Five pictures were taken of the back porch on the day after Ortman made the repairs, and these were introduced into evidence by the plaintiffs.

Ortman sat with his counsel during the trial; however, he did not testify, nor did the defendant-appellee put on any witnesses.

Judge Menchine instructed the jury as to contributory negligence as follows:

"She [Mrs. Ensor] had stated that she did not look as she stepped from the house onto the porch. A party cannot walk upon an obstruction which has been made by the fault of another and avail himself of it if he did not himself use common and ordinary caution. If you believe from the evidence that if she had looked she would have avoided the injury, she is contributorily negligent and cannot recover."

In an opinion ruling upon Ortman's motion for judgment n.o.v., the trial judge had no difficulty finding evidence sufficient to support the jury's determination of primary negligence

on Ortman's part, *i.e.,* Ortman promised to make repairs; there was consideration for this promise in that the tenants agreed to remain on the property if the repairs were made; and the defendant negligently failed to perform that promise. As to contributory negligence, however, he opined that:

> "In the instant case there is no circumstance explaining or excusing the failure to look. The photos offered by the Plaintiffs themselves show that none of the boards of the porch floor broke at the time of the fall and there is not a scintilla of evidence that there was any defect in the joists upon which said boards rested. Thus her fall can be explained upon *no other hypothesis* than that it was produced in whole or in part by her own negligence." (Emphasis added.)

In four earlier decisions this Court has had the opportunity to consider this issue of contributory negligence of a person injured by a defective condition in his own home where the owner of that residence had promised to repair such condition. See *Farley v. Yerman,* 231 Md. 444, 190 A. 2d 773; *McKenzie v. Egge,* 207 Md. 1, 113 A. 2d 95; *Edelman v. Monouydas,* 186 Md. 479, 47 A. 2d 41; *Robinson v. Heil,* 128 Md. 645, 98 Atl. 195. See also 26 A.L.R. 2d, 468, 568-70. Of the four, the *Edelman* and *McKenzie* cases are factually closest to the instant case and for that reason are discussed at some length below.

In *Edelman* the facts, germane to the issue here presented, were as follows: A tenant rented an apartment in the front room of which were two large and heavy windows extending almost down to the floor. One of the windows had been "nailed up" by the tenant's daughter due to its broken sash cords. The remaining window had one of its cords broken and the other was "frayed, rotten and worn." One month before the accident the tenant complained to the landlord about the windows and threatened to move unless they were repaired. Defendant landlord then assured her that he would send someone to fix them the next week. On the day of the accident, the plaintiff pushed the window up part way where it remained for a "few minutes." In an attempt to raise it still higher, she placed her right foot

on the sill beneath the window and at that moment the single sash cord broke and the window fell, striking her foot. The defendant landlord argued that the plaintiff knew of the dangerous condition of the window even better than he did, and that her action in placing her foot under the window was a decisive act of negligence on her part. In deciding that the issue of contributory negligence was, in that case, a jury question, our predecessors noted (at p. 482 of 186 Md.) that the danger was not a patent one. The Court also indicated (at p. 483) that the landlord's representations that he would repair the windows were relevant on the issue of contributory negligence, when it used the following language:

> "In the case at bar the landlord must have known that the tenant would be compelled to use the window. Yet he urged her to remain on the premises, and induced her to do so by his promise to fix the window 'next week.' Under the circumstances we do not think it was the duty of the tenant to move, or to repair the window herself, or to forego the use of the only available window. It was her duty to use due care under the circumstances until repairs were effected. Under the facts of this case we think that whether she did so was a question for the jury. *Eckert v. Reichardt,* 243 N. Y. 72, 152 N. E. 469; *Ashman v. Nichols,* 92 Or. 223, 178 P. 234, 180 P. 510; *Maday v. New Jersey Title G. & T. Co.,* 127 N. J. L. 426, 23 A. 2d 178."

In *McKenzie* the plaintiff was a tenant of a second floor apartment in a house owned by the defendant. There was a porch at the back of the apartment and a stairway leading from the porch to the ground. The plaintiff testified that she noticed the porch was "shaky," that slats were missing from the railing along the left side, that the top rail had come loose where it joined the building, that the condition seemed to be getting worse, that she notified the landlord and he had promised to fix the porch. Despite her knowledge of the defective condition the plaintiff continued to use the porch and its railing as a means of using a block and tackle device to lower a rubbish can. An

accident occurred when the plaintiff went to the porch to call her child, walked to the left side of the porch and put her arm on the railing, at which time the side of the porch gave way. In that case the defendant contended that the plaintiff was, in the words of the Court, "impaled upon the horns of a dilemma; the stronger the evidence of notice by her to the landlord of the particular defect, the clearer becomes her duty to avoid the use of the facility which she knows to be dangerous." In response to this contention this Court said, at page 10 of 207 Md.:

> "But it does not follow that because she knew of the defective condition and complained of it, she was *necessarily aware of the full extent of the risk. Cf. Dean v. Hershowitz*, * * * [177 Atl. 262 (Conn.)]. The testimony was that she did not do more than place her arm on the rail, that she did not lean on it as she did when operating the block and tackle. * * * Whether her action was so negligent under all the circumstances, as to bar recovery would seem to present a question for the jury, as in *Edelman v. Monouydas, supra*, where the tenant knew that the window cord was frayed, but not that it would break without warning in the act of raising the window." (Emphasis added.)

The Court then quoted with approval the rule, set out in Restatement, *Torts*, Section 473, that in cases of this nature where the defendant's negligence interfered with the plaintiff's right to use a portion of the premises, such a plaintiff is not guilty of contributory negligence in so using even though he knowingly exposed himself to a risk of bodily harm unless the risk was unreasonable. *Cf. Thompson v. Clemens*, 96 Md. 196, 210, 53 Atl. 919.

Applying the principles set forth in the above cases, we think that there was sufficient evidence from which the jury could have properly found that Mrs. Ensor's use of the porch, which she knew to be defective, was not unreasonable under all the circumstances. They could properly have found that she knew that the porch was defective but did not know, nor would a

person of reasonable prudence know, under the circumstances then existing, that the boards were likely to give way when she walked on them in pursuance of her normal household duties. As in Edelman, it was not her duty to repair the porch, and she did not have to forego its use unless it would be clearly unreasonable.

In his brief the defendant-appellee earnestly contends that Mrs. Ensor's particular manner of using the porch on the day of the accident amounted to contributory negligence as a matter of law. More specifically, he refers to her testimony in which she admitted that she did not look at the flooring before stepping onto the porch, and notes the absence of any testimony that she walked in other than a normal manner or that she "stepped slowly because of the condition" or took any other precaution. Appellee attempts to distinguish the above cited four Maryland cases from the instant one because in each the plaintiffs, unlike Mrs. Ensor here, testified as to taking some precaution for his own safety. However, this absence of testimony is by no means dispositive of the issue because in establishing the affirmative defense of contributory negligence a defendant must not only prove that a reasonably prudent plaintiff would have taken certain precautions, he must also prove that the failure to take the suggested precautions was a proximate cause of the injury. Ferguson, Adm'x v. Wootten, 240 Md. 186, 193, 213 A. 2d 498; Grue, et al. v. Collins, 237 Md. 150, 160, 205 A. 2d 260, and cases cited therein. Mindful of this, the appellee stresses the fact that Mrs. Ensor did not look at the flooring as she stepped out onto the porch, which, the defendant-appellee contends makes this case "fit squarely within the reasoning" of this Court in the cases of Eyler v. Adolph Beauty System, 238 Md. 227, 208 A. 2d 609; and Sugar v. Traub, 233 Md. 320, 323, 196 A. 2d 869, which both quoted Sutton v. Baltimore, 214 Md. 581, 584, 136 A. 2d 383, to the effect that " 'a party cannot walk upon an obstruction [a tree well] which has been made by the fault of another and avail himself of it, if he did not himself use common and ordinary caution.' " In Sugar the failure to look where a step would take the plaintiff (a wet area on the floor) and in Eyler looking but failing to react in a prudent manner to what he did see

(a strip of ice), were actions which were without question likely to cause harm to such actors because the dangers were patent. Had there been testimony here that had Mrs. Ensor looked, she would have seen, for instance, a missing board in the porch's flooring and that when she stepped out she stepped into the hiatus caused thereby, then this would plainly bring the plaintiff's conduct within the last cited holding. But the evidence here does not show that what the plaintiff would have seen, if she had looked, would have reasonably warned her of the impending danger.

The trial judge seemingly thought that the above mentioned evidentiary gap had been spanned when he stated in his opinion, granting the judgment n.o.v., that the photographs introduced by the plaintiffs showed that none of the boards had been broken and that her injury could be explained by no other hypothesis than that it was produced by her failure to look. It is to be noted that in considering whether the jury should decide the question of contributory negligence, or whether it should be decided by the court, notwithstanding the jury's verdict, a court, trial or appellate, must view the evidence and reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See *Brown v. Ellis,* 236 Md. 487, 491, 204 A. 2d 526. The pictures referred to by Judge Menchine were taken after the boards had been nailed back in place by Ortman and show only the surface. They do not show the condition of the tongue and groove (side) area of the boards. It is our view that from the evidence this accident can be explained by another hypothesis than that if Mrs. Ensor had looked she would have seen something in the flooring to alert her of the imminent danger. One such hypothesis which the jury could and perhaps did draw was that when Mrs. Ensor and others in the household had on other occasions walked on the porch floor with its usual "buckling shape" the boards' tongues and grooves normally fell into place when trod upon. However, on this particular occasion it could have looked normal, if it had been under scrutiny, but when she walked on it one of the tongues gave way or slipped, producing a "falling domino" effect on the other boards. This caused the boards "to scatter" and Mrs. Ensor to plummet. Thus her failure to look can not be said to have caused her injury as a matter of law.

Whether a reasonably prudent person, under similar circumstances, would have "stepped slowly" or somehow tested the floor, before entry upon the porch, were matters properly left for the jury's determination.

We think the case was properly submitted to the jury on the issue of contributory negligence but that the trial judge erred in granting the judgment n.o.v.

> *Judgment n.o.v. reversed and judgment entered for the appellants on the jury's verdict, with interest from June 8, 1965. Costs to be paid by appellee Edward F. Ortman.*