HARRISON *v.* MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.

[No. 567, September Term, 1966.]

584

Decided October 11, 1967.

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Samuel D. Hill,* with whom were *Dorothy T. Jackson* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellant.

*Joseph J. Lupinek,* with whom were *Max Sokol, Emanuel H. Horn* and *Dickerson, Nice, Sokol & Horn* on the brief, for L. H. Cranston and Son, Inc., part of appellees; *Joseph Allen, City Solicitor, Clayton A. Dietrich, Chief Assistant Solicitor* and *Victor W. Palmer, Assistant City Solicitor,* for Mayor and City Council of Baltimore, other appellee.

MARBURY, J., delivered the opinion of the Court.

Vernon G. Harrison, appellant, brought suit in the Baltimore City Court against Mayor and City Council of Baltimore City, Everett B. Reed, individually and t/a Reed Construction Company, and L. H. Cranston and Sons, Inc., appellees, as the result of injuries sustained when he stepped on an improperly secured water meter cover which "flipped", causing the appellant's leg to go down into the casing in which the meter was housed, thereby injuring his leg. The case was tried before a jury. At the close of the plaintiff's case the trial judge directed verdicts in favor of each of the appellees, and this appeal followed.

Harrison had been living at 600 Woodbine Avenue, Towson, Baltimore County, for about one year prior to his injury on July 9, 1962, renting the second floor apartment from the owner. When he first moved there the property that became 602 was part of one big lot on which stood premises 600. The general building contractor, Reed, started building on 602 in the spring of that year. The house at 602 was nearly completed when the injury occurred, but there was still some work being done. Reed engaged the plumber Cranston to effect a water connection with the main public water line in the street.

Under an agreement between the City and the County, the City installed water mains and meters and provided the water supply for County residents in that area. Under the City-County water agreement, the City installed the vault and meter in front of 602 Woodbine Avenue on June 26, 1962. Although the meter remained the property of the City and was subject to the ownership-control of the City, during the two weeks between the installation of the water meter and Harrison's injury on July 9, no City employee worked on or was near the water meter cover involved.

The water meter was situated in an unpaved public walkway. This walkway is about three feet wide, level, and was covered with a growth of short grass. Since the meter's installation its presence had been known to the appellant, who used the walkway regularly up to the time of the accident. The cover of this meter was flush with or slightly below the surface of the ground and, at the time of the accident, appears to have been unobstructed. The water meter installation was apparently similar

to those in general use in the area. It consisted of a metal casing or housing in which was placed the meter measuring the amount of water flowing from the street main into the private residence. The cover is round and of heavy metal and is fitted into a frame where it is locked in place by tabs which are operated by a worm gear, which in turn is controlled by turning a five-sided nut, located on top of the cover, three-quarters of a revolution by using a specially designed socket wrench.

The appellant, who lived at 600 Woodbine Avenue, had just arrived home from work and, after parking his truck, started in the direction of his apartment, walking a few steps behind his father, who had parked his car behind the appellant's vehicle. Harrison stepped onto the curb with his left foot and proceeded to take a second step with his right foot, which came to rest on the offending water meter cover. As he shifted his weight to his right foot in the process of taking another step the water meter cover flipped causing him to fall with his right leg in the hole wherein the meter was located, and his left leg twisted behind him. He testified that he stepped approximately on the center of the cover, which was apparently in place, and that it did not shift under his foot or feel wobbly but that as he placed his weight on it the cover tilted in front of him, as previously indicated, causing his right leg to be injured. The accident occurred under daylight conditions in clear weather. Harrison stated that he was not looking directly at his feet or at the meter cover but that he saw it out of the corner of his eye and that it did not appear to be out of place.

At the close of the plaintiff's case all three defendants moved for directed verdicts. Judge Sodaro granted the motions on the grounds that the plaintiff's proof showed no negligence on the part of any of the defendants and that in any event Harrison was guilty of contributory negligence as a matter of law, barring recovery.

On this appeal we need not concern ourselves with the trial judge's ruling as to the defendant Reed because, subsequently, the appellant dismissed the appeal as to that party.

With respect to the correctness of Judge Sodaro's ruling as to the City, we think his granting of a directed verdict as to that defendant was correct. While the City installed the water

meter, including its box and cover, some two weeks before the date of the accident and maintained control over it up to the time the accident occurred, the evidence showed no improper installation of the water meter apparatus and that no work had been done on it by any City employee from the time of its installation until July 9. The City was not required to constantly inspect or guard against tampering with the meter cover by parties other than its employees, nor was there any evidence that the City had any knowledge or notice that the meter cover was not properly fastened before the accident. At the argument before us counsel for the appellant, while he did not abandon his appeal as to the City, conceded that Harrison's case against the City was "weak," and did not pursue argument as to this appellee. In the analogous case of *Wash. Sub. San. Comm. v. Musgrove,* 203 Md. 231, 238, 100 A. 2d 27, this Court reversed the judgment of the lower court which allowed recovery where there was no evidence that the Sanitary Commission had interfered in any way with a water meter cover since the time of its installation. We conclude that the judgment as to the City must be affirmed.

This brings us to consideration of the correctness vel non of the trial judge's ruling when he granted defendant Cranston's motion for a directed verdict on the ground that the plaintiff had produced no evidence of any act of negligence committed by Cranston or any of its employees that in any way contributed to the happening of the accident, and his further ruling that Harrison was guilty of contributory negligence as a matter of law.

In determining the propriety of granting a motion for a directed verdict in favor of a defendant or in granting a motion for judgment n.o.v. in favor of such defendant, this Court must take as true the evidence of the party against whom the motion was directed, and will draw all natural and legitimate inferences that appear logical after a perusal of such evidence. *Wood v. Johnson,* 242 Md. 446, 219 A. 2d 231; *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721. If there is conflicting evidence, such conflicts will be resolved in favor of the plaintiff where there has been a directed verdict in favor of the defendant and the truth of the plaintiff's evidence will be assumed.

*Plitt v. Greenberg,* 242 Md. 359, 219 A. 2d 237; *Flyer v. Del Borrell,* 227 Md. 545, 177 A. 2d 865.

Here, the appellant testified that the cover was in place and apparently secure as seen from the corner of his eye, when he stepped on it. There was also evidence that employees of the defendant Cranston had been working on the meter cover several hours earlier on the same day that the accident occurred. From this it may well be inferred that the meter cover was not properly replaced and fastened by these workmen.

Cranston argued that when Harrison offered, as a part of the proof of the plaintiff's case, Cranston's answer to interrogatory No. 20 to the effect that: "on or about July 9, 1962 and three days prior thereto, the defendant's foreman, George Dillman, and other employees installed a subsidiary water pipe connecting the dwelling to the main water pipe and on or about July 9, 1962, had occasion to remove the cover from the water meter and to securely and properly replace and fasten it in its proper position" Harrison was bound by this evidence. Concededly this is in accord with the general rule that when a party calls as a witness his adversary, he is bound by the evidence elicited from him. However, as stated in *Proctor Electric Co. v. Zink, supra,* at page 33 of 217 Md.: "The testimony of a witness may be contradicted or discredited by circumstances as well as by statements of other witnesses, and a jury is not bound to accept a witness' testimony as true if it contains improbabilities, or if there are reasonable grounds for concluding that it is erroneous." (citing cases) To the same effect see *Picchio, Administratrix v. Scruggs,* 247 Md. 574, 234 A. 2d 133, and *Lehmann v. Johnson,* 218 Md. 343, 349, 146 A. 2d 886. The contention of Cranston might be true under certain circumstances, but here its answer was contradicted and refuted by Harrison's testimony that when he shifted his weight while walking across the cover it pivoted and flipped in front of him, causing him to fall into the meter vault. It was further contradicted by the evidence that the meter cover was equipped with tabs which were activated into place by the turning of the worm gear nut by means of a five-sided wrench. In addition, since the socket wrench required was of unusual type it could be properly inferred that no one except an employee of the City or a

plumber possessed such a wrench. As has already been pointed out in answer to interrogatory No. 20 which was offered as a part of the plaintiff's case, the City stated that the water meter was installed by it on June 26 and that none of its employees had had anything to do with the meter cover from that time until the accident occurred. Likewise, the defendant Reed, whose answer to interrogatory No. 20 was additionally offered as a part of the plaintiff's case, stated that none of his employees worked on or had occasion to remove or replace the water meter cover.

It was not necessary that the negligence of Cranston be proved to a mathematical certainty. As was said in *Ager v. Baltimore Transit Co.*, 213 Md. 414, 421, 132 A. 2d 469, "* * * the test to be applied, whether the question involved is the existence of an injury or its cause, is reasonable probability or reasonable certainty."

Appellee Cranston also argued that the trial judge properly ruled that the appellant was guilty of contributory negligence as a matter of law because he did not exercise ordinary care and caution when he crossed the area where the meter box was located and stepped on the cover without looking specifically at it. This argument is not supported by the evidence, which showed that the meter box was in a public walkway and that while appellant knew of its presence he had no reason to suspect that the meter box involved any danger to him. It is a matter of common knowledge that similar meter boxes are to be found quite frequently in public walkways in urban communities serviced by public water supply and that pedestrians walk over them as a matter of course every day without mishap. *City of Boulder v. Burns*, 135 Colo. 561, 313 P. 2d 712 (1957) ; *Fay v. City of Trenton*, 126 N.J.L. 52, 18 A. 2d 66 (1941).

In the recent case of *Ensor v. Ortman*, 243 Md. 81, 220 A. 2d 82, the lower court granted judgment n.o.v. where the facts showed that Mrs. Ensor walked on a porch that she knew to be defective and was injured when the porch flooring gave way. This Court ruled that she was not guilty of contributory negligence as a matter of law and reinstated the verdict of the jury.

In conclusion, we think that the plaintiff presented evidence from which a jury could have found that the defendant Crans-

ton was primarily negligent and that the appellant was not barred from recovery by contributory negligence, and that the case should have been allowed to go to the jury as to primary and contributory negligence with proper instructions on the evidence and the applicable law.

> *Judgment as to Mayor and City Council affirmed. Judgment as to Cranston reversed and case remanded for a new trial. Costs to be paid by Cranston.*