FARLEY, Etc., et al. v. YERMAN et ux.

[No. 287, September Term, 1962.]

446

*Decided May 14, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRES--COTT, HORNEY and MARBURY, JJ.

*Joseph I. Pines,* with whom was *Max R. Israelson* on the brief, for the appellants.

*William O. Goldstein* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

Questions of the negligence of a landlord, the defendant, of causation and of the contributory negligence of the tenant, a plaintiff, of his wife and their infant child, who was burned severely by flames from a gas log in the rented house, all are presented for decision in this case, in which the trial judge directed a verdict for the landlord.

The triers of fact could have found the following from the testimony: Mr. and Mrs. Farley rented a house in Baltimore from the defendant Yerman in October 1960. The furnace was defective or inadequate and did not furnish sufficient heat. There was a gas log which projected some four to six inches from a shallow fire place into the living room. Mr. Yerman told the Farleys to use the log to supplement the furnace, when necessary, and showed them how to turn it on and off. On various occasions, when he came to collect the rent, he was advised of the danger to the four small Farley children of the unprotected log with its open flames. More than once he promised to provide a screen, and at least once he said this in response to a threat by the Farleys that they would move if he did not. No screen was provided. The Farleys could not afford to buy one. On December 31, 1960, when the temperature was in the twenties, Mrs. Farley lit the log to keep the house habitable. She and her four children were looking out of the window watching traffic when suddenly four-year-old Virginia Farley turned and ran across the room in front of the log. The flames whipped out and ignited her dress, causing severe burns. Mrs. Farley had instructed the children not to go closer to the log than a line she had indicated, which was about a foot and a half from the log. Virginia did not pass closer than the line, but her dress fanned out and the flames came out and caught it.

Paragraph 9469 of Ordinance 578 of the Mayor and City Council of Baltimore,[1] approved October 31, 1941, was proven.

---

1. This paragraph was not included by the codifier in the Baltimore City Code (1950 Ed.).

It provides, in part, that "Every gas burning system shall be maintained in a safe working condition and properly operated * * *. Every gas burning system found dangerous to health, life or property shall be put out of service." The trial judge refused to admit the proffered testimony of the Senior Mechanical Inspector of the Bureau of Building Inspection of Baltimore, of another employee of the Bureau, and of the Chief Building Engineer of the City, that as a result of an inspection after the accident the Bureau had ordered the landlord to remove the log because it was in violation of Ordinance 578, and that the log, without a protecting screen, was dangerous and, if in the same condition at the time of the accident, as had been testified to without contradiction, was then a hazard. There was proffered, and refused also, the testimony of a mechanical engineer who had designed, installed and hooked up many heaters of the same type as the gas log in the Farleys' living room, that a screen would have kept the flames from touching the child's dress and that without a screen the log was dangerous.

Although at common law there was no implied covenant to repair and no warranty of the fitness for occupancy of leased premises, a tenant now may maintain an action for injuries sustained as a result of an uncorrected defect in rented quarters if there was a contractual obligation to repair the particular defect and a reasonable opportunity to correct it. Under these circumstances the landlord has the obligation to use reasonable care to make the needed repairs with reasonable diligence; and if he does not, wilfully or negligently, and harm ensues as a result, there arises a tort liability, subject to the usual rules as to proof of causation and the absence of contributory negligence on the part of the tenant. *McKenzie v. Egge,* 207 Md. 1, 6-7. There was testimony below which, if accepted by the triers of fact, would meet all the prerequisite conditions. A promise made in the face of a threat to move or a request by the landlord that the tenant remain creates a contract supported by consideration. *McKenzie v. Egge, supra.* There was explicit notice of the defect, recognition by the landlord of its dangers and ample opportunity to remedy it.

The landlord argues that if there was evidence of his negli-

gence—and we think there was, as we have indicated, despite his contention to the contrary—his failure to provide the screen was not a proximate cause of the accident. He urges that his negligence, if there was any, was merely passive and potential, while the failures of the father and mother to make physical arrangements which would prevent access to the flames or to keep their children far enough from them to prevent injury were independent, moving and effective causes of the harm which made their negligence the only proximate cause of the injury they complain of. He cites *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 389, for the proposition that intermediate, self-operating causes produced the injury and that the connection between his alleged negligence and the injury was broken by the intervening, immediate acts or omissions of the parents, which he had no reason to anticipate and over which he had no control.

We think the rule urged upon us is not applicable here. The landlord not only knew of the danger in the abstract but in the context of the almost continual presence of very young children in close proximity to the danger. He cannot disclaim realization that the parents might not be able to do more than they did, or that they would not do more, or that their acting as they did was not to be deemed so unusual or extraordinary as to be unreasonable or, finally, that the foreseeable acts or omissions of the parents would be but normal responses to a situation created by his own conduct.

All this being so, any negligence of the parents was not a superseding cause of the harm which the landlord's negligent conduct was a substantial factor in bringing about. *Restatement, Torts,* Sec. 447. See also Sec. 452.

This Court has recognized and applied the rule of the *Restatement* many times. *Jubb v. Ford,* 221 Md. 507, 513, pointed out that unless the facts admit of but one inference, the determination of proximate cause, like that of negligence, "that is, the determination of whether what occurred reasonably was to have been anticipated as a result of, or was induced by, the defendant's acts or omissions," is for the jury. Other cases considering whether the intervening act of a third person was a superseding cause which discharges the original actor include

450

*Consolidated Gas Co. v. Getty,* 96 Md. 683; *Baltimore v. Terio,* 147 Md. 330; *Pennsylvania Steel Co. v. Wilkinson,* 107 Md. 574; *Lashley v. Dawson,* 162 Md. 549, 561; *Holler v. Lowery,* 175 Md. 149, 161. See also *McKeon v. Goldstein* (Del.), 164 A. 2d 260, where the facts were comparable. The cases support the tenant's view that the landlord's negligence could permissibly be found by the jury to be a proximate cause of the burning of the child.

In *McKenzie v. Egge, supra,* (at page 11 of 207 Md.) the Court, in rejecting the landlord's claim that the adult tenant was guilty of contributory negligence or assumption of risk, as a matter of law, in using the defective and dangerous porch of which she had complained and which collapsed and injured her, adopted Sec. 473 of *Restatement, Torts:* "If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he knowingly exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless the risk is unreasonable." *Miller v. Graff,* 196 Md. 609, held that a child of four cannot be guilty of contributory negligence. *Cf. State, use of Taylor v. Barlly,* 216 Md. 94, 101-102. Under Code (1957), Art. 75, Sec. 2, any negligence of her parents would not be imputable to the infant, Virginia Farley, from the fact of their parenthood.

We think the official and expert testimony which was proffered and rejected was admissible. The Chief Building Engineer of Baltimore and two of his subordinates, to whom was confided the statutory duty of inspecting, and acting in regard to, gas heating equipment, each inspected the leased premises and the gas log after the accident. There was testimony, not disputed, that conditions had not changed between the time of the accident and the time of the inspection. The official violation notice sought to be introduced was issued as a result of the inspection. We see no reason why it was not prima facie evidence of the failure of the landlord to comply with the ordinance. That the inspection was made after the event, conditions being shown to be the same on both occasions, does not disqualify the testimony. *Harford County v. Wise,* 71 Md. 43, 55 ("The mere fact that he [an expert on bridges] did not inspect the abutments until some time after the disaster, did not

disqualify him from forming a judgment as to the character of the work, and the fitness of the materials used. *Turnpike Rd. v. Crowther,* 63 Md. [558] 568.").

We think the testimony of qualified experts that the design and operation of the gas log was unsafe and that a screen would have prevented the dress of the little girl from catching fire was admissible. The field would seem to be one in which special skill and knowledge would be superior to that of men in general so that the formation of a judgment by one having such training and experience would be a fact of probative value which would be of appreciable help to the jury. *Harper v. Higgs,* 225 Md. 24; *State Roads Commission v. Halle,* 228 Md. 24; *Fotopoulos v. Gas Service Co.* (Kan.), 96 P. 2d 666, 670. Testimony of an expert as to matters connected with structures, appliances and machines and their functions and operation has often been held admissible. See, for example, *American Oil Co. v. Wells,* 164 Md. 422, 431 (reasonable care required that pipes be capped when gas tank is left abandoned); *Refrigerating Co. v. Kreiner,* 109 Md. 361, 370 (proper construction of ice boxes); *Pennsylvania Steel Co. v. Nace,* 113 Md. 460, 486 (testimony as to the properties and the hardening process of concrete, and the danger and probable result of placing heavy weights on it before it has hardened); *Planters' Mut. Ins. Co. v. Rowland,* 66 Md. 236, 244 (difference in physical conditions and facts in the operation of two kinds of flour mills). See also *E. H. Beck & Co. v. Hanline Bros.,* 122 Md. 68; *Empire State Ins. Co. v. Guerriero,* 193 Md. 506; *Williams v. Dawidowicz,* 209 Md. 77; and an annotation in 146 A.L.R. 5, 36.

> *Judgment reversed, with costs, and case remanded for a new trial.*