LANGLEY PARK APARTMENTS, SEC. H., INC., ET
AL. *v.* LUND, ADMINISTRATOR, ET AL.

[No. 284, September Term, 1963.]

*Decided April 14, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*John F. McAuliffe,* with whom were *Robert C. Heeney* and *Heeney & McAuliffe* on the brief, for the appellants.

*Henry R. Berger,* with whom were *Milford Hillerson* and *Jacob A. Stein* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

This appeal presents for our determination a novel question in Maryland and one of some importance to the legal relationship between landlord and tenant. It may be stated as follows: Does a landlord have a duty to remove, or render safe, natural accumulation of ice or snow on walkways under his control provided he knew, or should have known of the existence of a dangerous condition resulting from the ice or snow. The issue was well briefed and argued by counsel for both sides.

The facts giving rise to this question are relatively simple and virtually undisputed. The appellant Langley Park Apartments, Sec. H, Inc., owned a large scale multiple housing development in Hyattsville. The appellant H. G. Smithy Co. managed the development and it is not contested that its liability is co-extensive with that of the landlord in this case. The injured plaintiff was Mrs. Evelyn O. Lund, who with her husband and two minor children lived in an apartment in the de-

velopment at 1426 Kanawha Street. Mrs. Lund and her husband were the original plaintiffs, but she died before the case was tried from causes not connected with her injuries, and he, as her administrator, was substituted as a party plaintiff. Mr. Lund in his individual capacity, and as her administrator, is the appellee.

On Saturday and Sunday, February 13 and 14, 1960, it had snowed. There were 4.9 inches on the 13th and another snowfall of 1.3 inches on the 14th. The accident occurred on February 17, about 10:30 p.m. when Mrs. Lund was walking with her two children and her husband on the concrete walkway in front of her apartment building. She had not been out of doors previously since the snowfalls. The husband was carrying their two year old son in his left arm, holding his wife with his right hand, and she in turn was holding the hand of her other child. She slipped and fell, dragging the rest of the family to the ground. As a result Mrs. Lund suffered a laceration over her left eye and a sprain of her left shoulder and arm, among other injuries.

The husband testified that when the family left the apartment at about seven o'clock that evening the weather was clear, cold and the condition of the walkway where they fell was slushy. Mrs. Lund's deposition had been taken and this was read to the jury as part of the plaintiffs' case. In that deposition she stated that it had snowed heavily on the 13th and 14th, but that the management had not removed the snow from the walks. In its answers to interrogatories, the H. G. Smithy Co. stated that it had a custodial force of four men to clean snow from the walks for the twenty-four hour period of February 17, and that shovels, mechanical snow removers, rock salt, sand, brooms, etc., were available to the force for the purpose of removing or treating the snow and ice from and on the walks. It was further stated that they had actually removed it on the date in question. In spite of this, however, it is the contention of the appellants that there was no duty imposed by law on the landlord to remove the ice and snow naturally accumulated.

There is a sharp division in the decisions of jurisdictions which have considered the question here presented. The two

views have been labeled the "Massachusetts rule" (or common law rule) and the "Connecticut rule" (or modern rule) in recognition of the respective states whose courts first ruled on a landlord's liability to remove snow and ice, but with opposite results.

The Massachusetts rule appears to have been first announced in the case of *Woods v. Naumkeag Steam Cotton Co.,* 134 Mass. 357, 45 Am. Rep. 344 (1883). The plaintiff was a tenant who used steps in common with other tenants in passing from her apartment to the street. She slipped on them when they were in an icy condition. The court suggested that when the owner let the premises with the right of the occupants to use the stairways in common with one another it might have been obligatory on the owner's part to keep them in a safe condition, but, said the court, this obligation has never been extended to require him to "reconstruct" the stairways if the stairways as they existed when the premises were demised, were not altogether safe by reason of a fault in the original construction which was apparent to both parties. From this premise the court reasoned that there was no duty on the part of the landlord to the tenant to remove from the steps the snow which naturally accumulated thereon, but it was the tenant's own duty to do so.

Although the *Woods* case was not cited, the rule of law it announced was reiterated in *Smolesky v. Kotler,* 169 N. E. 486 (Mass.). That case again stressed that the only duty the landlord has with respect to common passageways is to maintain them in the same condition of safety as they were or appeared to be when the tenant's estate commenced. Actually, the holding of the Massachusetts court had a precursor in the earlier case of *Purcell v. English,* 86 Ind. 34, 44 Am. Rep. 255 (1882), where the Indiana court in dictum appeared to reject generally the rule that a landlord had a duty at all to keep common passageways safe, but did narrow its holding to ruling that there was no duty to protect the tenant from the hazards arising out of such temporary causes as snow and ice accumulation. As late as 1959 Massachusetts still adhered to the common law rule. *Spack v. Longwood Apartments, Inc.,* 155 N. E. 2d 873. Other jurisdictions which followed the common law rule before the

Connecticut court handed down its contrary decision were Washington, *Oerter v. Ziegler,* 109 P. 1058 (1910), and New York, *Dwyer v. Woollard,* 199 N. Y. S. 840 (1923). However, New York appears to have taken a middle view. In *Dwyer* it was said that the landlord's duty to remove the snow and ice from a common yard used by his tenants was no greater than that of a municipality with regard to its streets, suggesting that only when the accumulation had formed ridges or hummocks of unusual size so as to be hazardous would there be any duty on the landlord to take action.

A little more than forty years after the landmark Massachusetts case, the Supreme Court of Errors of Connecticut in *Reardon v. Shimelman,* 128 Atl. 705, expressly rejected the Massachusetts rule and announced the modern rule. The facts of that case are similar to those of the present case. The defendant owned two large apartment buildings. Between the two was an open space or court over which were laid interconnecting walkways. The plaintiff, who was an invitee, visited a tenant of one of the buildings. On her way back to the public street she slipped, fell, and injured herself as she was obliged to pass along the common walkway. For several days the walk had been covered with ice and frozen snow, was alternately smooth and lumpy, and no attempt had been made to clear it or put a nonskid substance such as sand or ashes on it. The court held that the accumulation under the circumstances created a danger of which the landlord was aware and imposed an obligation on him to take remedial action. After stating that the landlord had a duty to exercise reasonable care to prevent the occurrence of defective or dangerous conditions in the common approaches, the opinion went on to state the court could see no distinction as to whether a particular danger arose from the fall of snow or freezing water. The accumulation was likened to those natural causes which, though operating more slowly, bring about the decaying of wood or rusting of iron, the prevention or correction of which clearly would have been the landlord's duty.

Of those states which have had the benefit of both the Massachusetts and Connecticut courts' decisions when faced with the question here presented, most have decided that the latter court's

reasoning is the more sound. The textwriters appear to support this latter view also. 2 Harper & James, *Law of Torts,* Section 27.17; Prosser, *Torts* (2d ed.), Section 80. However, a few jurisdictions have been aligned with Massachusetts. Some representative cases are: *Goodman v. Corn Exchange Nat. Bank & Trust Co.,* 200 Atl. 642 (Pa., 1938); *Turoff v. Richman,* 61 N. E. 2d 486 (Ohio, 1944), but *cf. Oswald v. Jeraj,* 67 N. E. 2d 779 (Ohio, 1946) and *Bowman v. Goldsmith Bros. Co.,* 109 N. E. 2d 556 (Ohio, 1952) for a possible caveat; *Davis v. Lindau,* 70 N. W. 2d 686 (Wis., 1955); *Woodley v. Bush,* 272 S. W. 2d 833 (Mo., 1954), but *cf. Feld v. Frankel,* 351 S. W. 2d 755 (Mo., 1961). Cases are collected in a thorough annotation on point found in 26 A.L.R. 2d 610. Among the most recently decided following the Connecticut rule are *Young v. Saroukos,* 185 A. 2d 274, *aff'd* 189 A. 2d 437 (Del., 1963); *Grizzell v. Foxx,* 348 S. W. 2d 815, *cert. den.* St. Sup. Ct. (Tenn., 1961); *Fincher v. Fox,* 131 S. E. 2d 651 (Ga., 1963).

In adopting the rule which is better suited to this State we are not entirely without guidance from our prior decisions. There is no doubt in Maryland that where a landlord leases separate portions of his property to different tenants and reserves under his control the passageways and stairways, and other parts of the property for the common use of all the tenants he must then exercise ordinary care and diligence to maintain the retained portions in a reasonably safe condition. *Elmar Gardens, Inc. v. Odell,* 227 Md. 454, 177 A. 2d 263, and cases cited. The appellants referred us to the early case of *Flynn v. Canton Co.,* 40 Md. 312, and to *Realty & Mtge. Co. v. Ulrich,* 164 Md. 666, 165 Atl. 708 as indicating that our prior view in negligence actions against the property owner where acts of nature are involved leaned toward the common law rule which they urge upon us in this case. The *Flynn* case involved a Baltimore City ordinance which required the abutting landowners to remove ice and snow which had accumulated on the public sidewalks. This was violated by one owner, and the plaintiff who slipped and was injured while traversing the sidewalk in front of the corporate owner's property sued it. There is

dictum in the case stating that the ice which caused the injury was not placed on the pavement by any instrumentality of the owner, and for that reason the element of proximate cause may relieve the owner. However, we read the case to hold that the ordinance made the property owner an agent of the city for the purpose of removing the accumulation, and since no private action would lie against the municipality it therefore would not lie against the owner. The *Ulrich* case cited the dictum from the *Flynn* case for the proposition that if the injury had been caused by rain followed by freezing and then by snow the owner abutting the sidewalk would not be liable since it had not produced the cause from which the plaintiff's injuries resulted. Neither of these cases just discussed dealt with the factual situation present here, where the walk area on which Mrs. Lund slipped and was injured was on the landlord's property proper and was for the use of all the tenants. In fact, it was the only means of ingress and egress to the Lunds' apartment.

In *Sezzin v. Stark,* 187 Md. 241, 49 A. 2d 742, we had an occasion to recognize, citing with approval language from a New Jersey case, that the construction of modern apartment houses has resulted in situations which differ markedly from those contemplated by rural habitations at the common law. The multi-unit apartment dwelling is rapidly becoming commonplace, especially in our growing suburban areas in and around Baltimore City and Washington, D. C. In any one unit are apt to be the very young and the very old, non-working residents who seldom venture far beyond the apartment complex. They, and all others lawfully using the common walkways, must be provided with reasonably safe approaches to and from their apartments and the public streets. To expect these tenants to assume the duty of maintaining the common walks would be impractical. Aside from the problem of assigning areas of re-responsibility, the average tenant is ill equipped to perform the task of snow removal. It is not feasible to expect that he has and can store the necessary implements and other equipment required to keep the walks clear. Where would the duty end? Would the tenant also be required to inspect the common stairways and keep them free of substances which might cause in-

juries? In an article in 41 Col. L. Rev. 349, titled "Torts—Landlord and Tenant — Liability for Failure to Remove or Render Safe Ice and Snow on Common Passageways and Approaches," the writer states at pp. 351, 352:

> "The apparent premise behind the Massachusetts rule that the tenant impliedly assumes any unsafe condition not specifically provided for in his contract of lease is rendered illusory by the practical inability of an individual tenant to provide by contract or otherwise for the safety of common areas, considering the difficulty of securing agreement among all the tenants to share the burden.
>
> * * *
>
> "Since even an absentee landlord could with relative inexpense employ some one regularly present to remove these hazards, while the tenant in a multiple-family dwelling is practically unable to protect himself either by contract or self-help, the imposition of liability on the landlord seems more consonant with the statutory policy of protecting the tenant's safety [referring to 'safe place statutes']."

As mentioned above, there was some indication from the H. G. Smithy Company's answers to interrogatories that the appellants had assumed the duty of removing the snow and ice. Absent contributory negligence, even under the Massachusetts rule a recovery might be permitted if the landlord had made such an undertaking and the injured party had relied upon it. *Erickson v. Buckley,* 120 N. E. 126 (Mass.). However, none of the custodial force was available to testify at the trial, and the evidence is otherwise inconclusive of an assumption of the duty by the owner and a reliance upon it by the appellee or his deceased wife.

We are of the opinion that the Connecticut cases and those of other jurisdictions following them express the better rule. In this case the walk was a portion of the property reserved by the landlord for the use of all the tenants. The danger was equally apparent to both landlord and tenant. We do not mean to suggest that the mere fact that snow has accumulated will

410

in and of itself result in a liability upon the landlord, for that would make him virtually an insurer. We hold that an accumulation of ice or snow upon the common approaches to tenement houses or multi-family apartment buildings may result in imposing on the landlord liability for injuries due to it, provided he knew, or in the exercise of reasonable care should have known, of the existence of a dangerous condition and failed to act within a reasonable time thereafter to protect against injury by reason of it. No question is raised on this appeal as to the adequacy of notice to the landlord of the dangerous condition or as to adequate opportunity to correct it.

Appellants also contend that Mrs. Lund was guilty of contributory negligence as a matter of law. However, the sole reason assigned by them to the lower court on their motions for directed verdicts and for judgment n.o.v., was that the landlord did not have a duty to remove the natural accumulations of snow and ice. No question of contributory negligence was raised as the basis for granting any of these motions. However, the trial court did instruct the jury on the question of contributory negligence and no objection was made to that instruction. The only objection made to any of the court's instructions concerned the landlord's duty to remove the accumulation of snow and ice from the walkways. Therefore, the appellants have not properly preserved for review by this Court the question of contributory negligence as a matter of law on the part of Mrs. Lund. Maryland Rule 885.

*Judgment affirmed, costs to be paid by the appellants.*