## SACKS *v.* PLEASANT

[No. 174, September Term, 1968.]

*Decided April 2, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, SINGLEY and SMITH, JJ.

*Ludd R. Farr, Jr.,* with whom was *Moses J. Cohen* on the brief, for appellant.

*Melvin J. Sykes,* with whom was *David Kimmelman* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mrs. Pleasant, the plaintiff below, brought suit against her landlord, Sacks, to recover damages for injuries sustained when she fell from a defective toilet seat in the apartment which she occupied as a tenant. The jury returned a verdict of $20,000 in her favor, and Sacks has appealed from a judgment in this amount.

Sacks took Mrs. Pleasant's pre-trial deposition and then moved for summary judgment which was denied. His motion for a directed verdict at the conclusion of the entire case and a motion for a judgment *n.o.v.* were also denied. He alleges that the court's denial of his motions was erroneous, contending that Mrs. Pleasant's pre-trial deposition and her testimony at trial clearly established that she had assumed the risk of injury or alternatively was contributorily negligent.

There was testimony from which the jury could have found

the following facts. For some eight years before the accident occurred on 3 December 1963, Mrs. Pleasant, who was 58 years of age, had lived alone in a first floor apartment which she rented from Sacks at 1222 Hollins Street in Baltimore. She paid a weekly rent of $11.00 and the cost of gas and electricity. The toilet seat in Mrs. Pleasant's bathroom had been broken for some five or six months prior to the accident; Mrs. Pleasant had complained "about a dozen times" of the condition to Sacks when he made his weekly visits to collect the rent; and Mr. Sacks had looked at the broken seat and said, "Dorothy, don't worry, I'll have it fixed."

The broken seat was not repaired, however, and according to Mrs. Pleasant, there was a further colloquy with Mr. Sacks:

> "I asked him to fix it. He said, 'Well, I'm going to have it fixed, don't worry.' I said, 'I'm going to move if it isn't fixed.' He said, 'There is no use talking about that,' he said, 'You don't have to move because I am going to have it fixed, you don't have to move.' I had a place but he told me not to move, 'Please don't move.' "

Mrs. Mary E. Orndorff, Mrs. Pleasant's sister, testified that she was present when such a conversation took place between Mrs. Pleasant and Mr. Sacks and when Mrs. Pleasant showed Mr. Sacks the broken seat. Mr. Sacks, called as an adverse witness by Mrs. Pleasant, flatly denied that he had been told of the broken toilet seat or that he had seen it before the accident. Since Sacks' testimony was contradicted, Mrs. Pleasant was not bound by it, *P. Flanigan & Sons, Inc. v. Childs*, 251 Md. 646, 652, 248 A. 2d 473 (1968), and cases there cited.

In the early evening of 3 December 1963, Mrs. Pleasant was getting ready to attend services at the "Mission Rescue." This is how she described the accident:

> "Q. Tell Her Honor and the jury what happened and how you became injured on that day or that evening.
> "A. Well, I fell off the toilet seat and threw me on the concrete floor and broke my arm.

"Q. Were you sitting on the toilet?

"A. Yes, I was, I had to get on the bowl.

"Q. You say you had to get on the bowl?

"A. Yes, for both things.

"Q. You say you were thrown off while you were sitting on the bowl?

"A. Thrown off on the concrete floor.

"Q. What caused you be thrown off?

"A. The broken toilet seat.

"Q. When you fell, how did you fall, to your right or to your left?

"A. Well, I don't know. It was just a shock, it throwed me down.

"Q. What did you land on when you were thrown down?

"A. On the concrete floor, I landed on my left arm."

An examination of the seat, which was admitted as an exhibit, showed that a long bolt, which passed through the hinges on the seat and on the lid, and was intended to engage two metal lugs which were bolted to the china bowl, had snapped off at one end. As a consequence, the bolt was too short to engage the two lugs, and the seat could no longer be firmly anchored to the bowl. Mrs. Pleasant testified that a neighbor had attempted to fasten the seat to the lugs with wire. While this may have been a temporary expedient, it obviously fell short of a final solution, since it can be assumed that the seat slipped from the bowl when the wire broke or became disengaged.

The day after the accident, Mrs. Pleasant saw a chiropractor, who x-rayed her arm and referred her to an orthopedic surgeon. The surgeon diagnosed the injury as a Colles fracture of the left wrist and sent her to Franklin Square Hospital to have the fracture set. Her arm was in a cast for 10 weeks, and she had intensive physiotherapy for about two years. At the time of the trial, according to expert medical testimony, Mrs. Pleasant had achieved maximum recovery but was left with a 25% permanent partial disability of her left hand and a 10% loss of the use of her left arm.

44

The thrust of Sacks' argument is that Mrs. Pleasant's pretrial deposition showed that she had either assumed the risk of injury or was guilty of contributory negligence as a matter of law and that the lower court should therefore have granted his motion for summary judgment. He relies on the same reasoning in support of the contention that his motion for a directed verdict and his motion for a judgment *n.o.v.* should have been granted. Since the arguments are similar, they will be considered together.

While the common law implied no covenant on the part of a landlord to make repairs and no warranty of fitness for occupancy of leased premises, in *Thompson v. Clemens,* 96 Md. 196, 208, 53 A. 919, 60 L.R.A. 580 (1903), our predecessors first indicated that in a proper case, a tenant could hold his landlord answerable in tort for damages for injuries sustained as the result of the landlord's negligent breach of a contractual duty to make repairs. The later cases of *Pinkerton v. Slocomb,* 126 Md. 665, 95 A. 965 (1915), *Robinson v. Heil,* 128 Md. 645, 98 A. 195 (1916), and *Edelman v. Monouydas,* 186 Md. 479, 47 A. 2d 41 (1946), further developed this doctrine, so that by 1955 it was possible for Judge (later Chief Judge) Henderson, speaking for this Court in *McKenzie v. Egge,* 207 Md. 1, 113 A. 2d 95 (1955), to formulate the rule:

> "It is well settled in Maryland that under certain conditions a tenant may maintain an action for injuries sustained as a result of a defect in rented premises, despite the absence, at common law, of an implied covenant to repair or a warranty of the fitness for the occupancy of leased premises. These conditions are, that there be a contractual undertaking to make repairs, notice of the particular defect, and a reasonable opportunity to correct it. Where these conditions are met, there arises an obligation to use reasonable care to make the repairs, for the negligent breach of which there is a tort liability, subject to the usual rules as to proof of causation and the absence of contributory negligence on the part of the tenant." 207 Md. at 6, 7.

This rule has since been applied in *2310 Madison Ave., Inc. v.*

*Allied Bedding Mfg. Co.,* 209 Md. 399, 407, 121 A. 2d 203 (1956) ; *Farley v. Yerman,* 231 Md. 444, 448, 190 A. 2d 773 (1963), and *Ensor v. Ortman,* 243 Md. 81, 87, 220 A. 2d 82 (1966).

The Maryland view is that of a respectable minority of American jurisdictions, Prosser, *Torts,* (3d ed. 1964) § 63 at 421; 1 American Law of Property (1952) § 3.79; 1 Tiffany, *Real Property* (3d ed.) § 106, and it is in accord with that adopted by Restatement, *Torts* 2d (1965) § 357:

> "A lessor of land is subject to liability for physical harm caused to his lessee * * * by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
>
> (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
>
> (c) the lessor fails to exercise reasonable care to perform his contract."

Admittedly, in the case before us, there was no written lease, but since the rent was paid weekly, a tenancy from week to week was created. *Darling Shops Del. Corp. v. Balto. Center Corp.,* 191 Md. 289, 293, 60 A. 2d 669 (1948). There was testimony in the case at bar from which the jury could have found, as it apparently did, that Sacks had made minor repairs in the past, and more significantly, that he had agreed to repair or replace the defective toilet seat. It has been held in many cases that a promise made by a landlord in the face of the tenant's threat to move or a request by the landlord that the tenant remain, is supported by consideration. *Farley v. Yerman, supra,* 231 Md. at 448; *McKenzie v. Egge, supra,* 207 Md. at 8, 9; *Edelman v. Monouydas, supra,* 186 Md. at 483; 1 Tiffany, *Landlord and Tenant* § 87 e (3) at 600. *Compare,* however, *King v. Compton,* 187 Md. 363, 50 A. 2d 131 (1946), where the landlord was under no general contractual duty to repair, and the injury was sustained on a ramp after the landlord had promised to repair a porch or platform.

Although Mrs. Pleasant's account of the manner in which the accident occurred leaves much to be desired, the jury could have found that the seat had been broken for five or six months; that Sacks knew of this condition and had promised to repair or replace the seat; that Mrs. Pleasant had attempted to fasten the seat to the bowl with wire; that the seat was "loose" and "wobbly"; that Mrs. Pleasant had used the seat without mishap until the day of the accident, when it became detached from the bowl; and that at that time the lid and the seat separated, causing Mrs. Pleasant to fall to the floor. Unless the facts admit of only one inference, the determination of proximate cause is a jury question. *Farley v. Yerman, supra,* 231 Md. at 449; *Yellow Cab Co. v. Hicks,* 224 Md. 563, 168 A. 2d 501 (1961); *Jubb v. Ford,* 221 Md. 507, 513, 157 A. 2d 422 (1960).

We cannot accept Sacks' contention that, as a matter of law, Mrs. Pleasant was contributorily negligent or assumed the risk when she continued to use the defective toilet seat. Sacks says, and we agree, that in some cases, the same facts may support a contention of contributory negligence and of assumption of the risk. *Wiggins v. State,* 232 Md. 228, 192 A. 2d 515 (1963); *Evans v. Johns Hopkins University,* 224 Md. 234, 167 A. 2d 591 (1961). However, while the doctrines are similar in scope, we have pointed out that they differ: assumed risk implies an intentional exposure to a known danger, which may or may not be true of contributory negligence. *Gibson v. Beaver & Southern States Howard County Petroleum Coop., Inc.,* 245 Md. 418, 226 A. 2d 273 (1967); *Burke v. Williams,* 244 Md. 154, 223 A. 2d 187 (1966); *Jimmy's Cab, Inc. v. Isennock,* 225 Md. 1, 169 A. 2d 425 (1961); *People's Drug Stores, Inc. v. Windham,* 178 Md. 172, 12 A. 2d 532 (1940).

In cases like the one before us, where a landlord's negligent failure to repair has made it impossible for the tenant to use a portion of the demised premises without exposing himself to the risk of bodily harm, the tenant is not contributorily negligent unless he acts unreasonably. *Ensor v. Ortman, supra,* 243 Md. at 89; *Farley v. Yerman, supra,* 231 Md. at 450, and *McKenzie v. Egge, supra,* 207 Md. at 11, have adopted the rule of Restatement, *Torts* (1934) § 473:

"If the defendant's negligence has made the plain-

tiff's exercise of a right or privilege impossible unless he knowingly [1] exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless the risk is unreasonable."

It cannot be denied that Mrs. Pleasant had a right to use the toilet in the only bathroom in her apartment. She testified that it was the only one to which she had access. She had, in fact, used the defective seat for five or six months without mishap. She said that it was "a little bit loose", that she "had to be careful" but "it never came off" and that her fall to the floor was "the biggest surprise of [her] life." We do not regard her use of the seat as an exposure to a known or obvious danger. 65A C.J.S. *Negligence* (1966) § 174(1) at 287; Prosser, *Torts* (3d ed. 1964) § 67 at 450; *compare Sezzin v. Stark,* 187 Md. 241, 49 A. 2d 742 (1946) and *McKenzie v. Egge, supra,* 207 Md. at 10 *with Lawrence v. Cavanaugh,* 249 Md. 176, 238 A. 2d 859 (1968) and *Burke v. Williams,* 244 Md. 154, 223 A. 2d 187 (1966).

Sacks relies on language in *Thompson v. Clemens, supra,* 96 Md. at 211, in support of the proposition that, when the expense is trivial [2] a tenant should make repairs and charge his landlord, thus avoiding the risk. In passing on the motion for summary judgment the court below sagely observed that "What might be trivial expense to one person, might not be to another." This was particularly pertinent in the light of Mrs. Pleasant's deposition, which showed that her total income was $25 per week in support payments from an estranged husband, from which she paid $11 rent and the cost of gas and electricity leaving her with less than $14 a week for the necessities of life.

As we see it, this case comes squarely within the rule of *McKenzie v. Egge, supra,* 207 Md. 1, which held that a jury might properly hold a landlord liable for injuries sustained by a tenant who fell through a defective railing on a porch which she used daily in her household duties, the landlord having prom-

---

**1.** Restatement, *Torts* 2d (1965) § 473 omits the word "knowingly", and substitutes "unless he acts unreasonably" for "unless the risk is unreasonable."

**2.** After the accident, Sacks paid $3.69 for a new seat.

ised to repair the railing and having failed to do so, and *Edelman v. Monouydas, supra,* 186 Md. 479, which found the landlord's liability to be a jury question where there was testimony that the tenant's daughter complained to the landlord about a defective sash cord, which the landlord promise to, but did not, replace, when the cord broke and the window fell on the tenant's foot.

What was said in *Edelman v. Monouydas, supra,* is peculiarly apposite here:

> "* * * In the case at bar the landlord must have known that the tenant would be compelled to use the window. Yet he urged her to remain on the premises, and induced her to do so by his promise to fix the window 'next week.' Under the circumstances we do not think it was the duty of the tenant to move, or to repair the window herself, or to forego the use of the only available window. It was her duty to use due care under the circumstances until repairs were effected. Under the facts of this case we think that whether she did so was a question for the jury." 186 Md. at 483.

On the facts of the case before us, we have no difficulty in concluding that Mrs. Pleasant was not, as a matter of law, contributorily negligent, nor did she, as a matter of law, assume the risk. Whether she acted reasonably or unreasonably under the circumstances was a question properly submitted for determination by the jury.

*Judgment affirmed; costs to be paid*
*by appellant.*