KLEIMAN, ET AL. *v.* MONO OF
MARYLAND, INC.

[No. 325, September Term, 1968.]

*Decided July 3, 1969.*

The cause was argued before HAMMOND, C. J., and
MARBURY, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Lloyd A. Dreiling,* with whom was *David D. Patton* on
the brief, for appellants.

*Gerald E. Topper,* with whom was *Bernard Carton* on
the brief, for appellee.

FINAN, J. delivered the majority opinion of the Court.
SINGLEY, J., dissents. Dissenting opinion at page 555,
*infra.*

This is an action brought by a tenant against the land-
lord to recover property damages resulting from a leak-
ing water pipe allegedly occasioned by the failure of the

landlord to keep the pipes in a state of good repair pursuant to a lease agreement.

Appellants, David Kleiman, Bernard Kleiman and Samuel Rockberg, individually and doing business as Hollins Realty Company, owners and landlords of a multiple tenant business premises known as 2301-2315 Hollins Street, in the City of Baltimore, Maryland, rented a portion of the fourth floor in Building "B" to the appellee, Mono of Maryland, Inc., as tenants. The appellee conducted a printing enterprise on its premises and was engaged in printing, editing and putting together a scientific book for the Combustion Institute which work sold for $35.00 per copy. The lease between the parties, to extend for a period of five years, was signed November 27, 1961. It provided in part:

> "2. That the Tenant will keep the premises hereby demised in good order and repair and will surrender possession thereof at the end of the term or any renewal or extension thereof in as good condition as when received, ordinary wear and tear and damage by fire or other casualty excepted. *During the term of the Lease and any renewal thereof, the Landlords shall keep the exterior walls, roof, water and heating pipes, and spouting of the demised premises in good order and repair, and the Tenant shall keep the interior of the demised premises in good order and repair but excluding water and heating pipes.* All structural repairs to both the exterior and interior of the demised premises shall be made by the Landlords. Upon the termination of this Lease or any renewal thereof, the Tenant shall have the right to remove from the demised premises all machinery and fixtures installed by them in the demised premises and used in connection with their business.
>
>        \* \* \*
>
> "11. And, furthermore, that *the Landlords*

*shall not be liable for any loss of or damage to any property* in or about the demised premises, which shall be brought about by other tenants or occupants of parts of the building; or any person or persons whomsoever, *other than that resulting from falling plaster, steam, gas, electric, water, rain or snow which may leak from any part of said building or from the pipes, appliances or plumbing on the premises* or from the street or subsurface, or from any other place or cause, except and unless the Tenants shall have given the Landlords prior notice in writing and the Landlords shall fail or neglect to make necessary repairs to or remedy the condition." (Emphasis supplied.)

On August 31 or September 1, 1965, or on both days, a water pipe in the lavatory and toilet facilities of a fifth floor tenant in the building became loose or disconnected causing approximately 1,000 gallons of water to leak through the ceiling of the fourth floor, damaging some 256 of the scientific books of the appellee on the fourth floor. The toilet in question had been installed about three and a half years prior to this occurrence. The evidence indicated that the copper pipe, which caused the leak, entered the water tank of the toilet to which it was normally securely fastened; however, it became separated from the tank in some manner (the maintenance man thought somebody might have dropped something heavy on it or stepped on it) and was pushed back into the tank without any secure connection.

There was evidence that the tenant (appellee) had complained about the "faulty condition of the building" orally and by letter, but never specifically about the condition which ultimately caused the damage.

On May 3, 1966, appellee brought suit against the appellants, alleging in two counts that, (1) as a result of the appellants' failure to keep the water pipes in good order and repair as provided for in the lease, the appel-

lee sustained damages from the leaking water in the amount of $15,538.24 and that, (2) as a result of appellants' sole negligence, the appellee sustained $25,000.00 in damages.

Trial was held on June 10, 1968, in the Baltimore City Court before Judge J. Harold Grady, sitting without a jury. After hearing the testimony and the arguments of counsel, the lower court found in favor of the appellee (plaintiff) and against the appellants on the first count of the declaration, alleging the breach of the contractual obligation to keep the pipes in a state of repair, and in favor of the appellants and against the appellee on the second count, based on the negligent failure to keep the pipes in a state of repair. The lower court awarded the appellee $9,846.33 as the amount of damages sustained.

Appellee took no appeal from the judgment of the lower court while the appellants bring this appeal from the judgment on the first count. It is the contention of the appellants that they had not been given notice of any need for repairs to the pipes in question which caused the leak, and that in the absence of such notice the appellee can not recover.

In its oral opinion the lower court stated its findings, as well as the reasoning upon which its judgment was based, and we find the following excerpts from the opinion helpful toward an understanding of the case:

> "First of all, with reference to the Court dealing with the contractual obligation, Count 1, the contract is clear that the landlord, in this case the defendant, had the obligation—paraphrasing Item 2 in the lease — to maintain in good order and repair the premises, and particular reference is made later to water and heating pipes. This is an affirmative duty which the landlord undertakes, and it does not seem to me that this duty is discharged by having a maintenance man who is available to fix the leaking water pipe after it's discovered. This certainly

is not a sufficient effort to maintain the premises in good condition—to stand by and wait until the leak occurs and then say 'I'm doing my best because as soon as it happened I fixed it.'

"The terms of the contract, it seems to me, place an obligation upon the landlord to have some effort made to inspect or have some routine that might detect these conditions before the leak starts to do damage; and I find that no such schedule of inspection or no such routine was set up.

"The testimony of Mr. Mellott, the maintenance man, is that he never went to look at any pipes until he got a complaint, presumably, that something was noticeably wrong with the pipe.

"I find that the burden of proof has been met under the first Count of the Declaration.

"On the second Count, dealing with ordinary care, I have my doubts as to whether the plaintiff has met the burden under that theory. By that I mean to say, in the event the lease had not placed this obligation upon the landlord, it seems dubious as to whether the plaintiff could have prevailed on the theory of ordinary negligence."

The most recent resume of the development, and present status, of the law in Maryland regarding the obligation of a landlord to keep premises in a state of repair is found in the recent and comprehensive opinion of this Court, written by Judge Singley, in *Sacks v. Pleasant*, 253 Md. 40, 251 A. 2d 858 (1969). *Sacks* restates the rule formulated by this Court in *McKenzie v. Egge*, 207 Md. 1, 113 A. 2d 95 (1955), wherein Judge Henderson, (later Chief Judge) writing for the Court stated:

"It is well settled in Maryland that under certain conditions a tenant may maintain an action for injuries sustained as a result of a defect in rented premises, despite the absence, at com-

mon law, of an implied covenant to repair or a warranty of the fitness for the occupancy of leased premises. These conditions are, that there be a contractual undertaking to make repairs, notice of the particular defect, and a reasonable opportunity to correct it. Where these conditions are met, there arises an obligation to use reasonable care to make the repairs, for the negligent breach of which there is a tort liability, subject to the usual rules as to proof of causation and the absence of contributory negligence on the part of the tenant. * * *". *Id.* at 6, 7.

In the instant case the appellant relies on the rule of *Egge,* and buttresses this with the following quotation from the *Restatement of the Law, Torts* (Second) (1965) ; Ch. 13, Title F., Topic 3, Sec. 357 :

> "A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition existing before or arising after the lessee has taken possession if
>
> "a—the lessor, as such, as contracted by covenant in the lease or otherwise to keep the land in repair, and
>
> "b—the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's covenant would have prevented, and
>
> "c—the lessor fails to exercise reasonable care to perform his contract."

A comment states :

> "d. Since the duty arises out of the contract to repair, the contract defines the extent of the duty. *Unless it provides that the lessor shall inspect the land to ascertain the need of repairs, his contract to keep the premises in safe condition subjects the lessor to liability only if he*

*does not exercise reasonable care after he has had notice of the need of repairs. In any case, his obligation is one of reasonable care."* (Emphasis supplied.)

If, in the case at bar, the obligation of the landlord to keep the water pipes in "good order and repair," were based on the language found in paragraph 2 of the lease (set forth earlier in this opinion) or on the general obligations which the contract of lease imposes on a landlord, then the rule of *Egge* and the *Restatement* would be dispositive of this case. If such were the case, the question of whether the tenant (appellee) had given notice of the defective pipe would become paramount; however, we cannot ignore the language found in paragraph 11 of the lease (also set forth earlier in this opinion) by which the landlord assumed liability for damages resulting to tenants of the building "from falling plaster, steam, gas, electric, water, rain or snow which may leak from any part of said building or from the pipes, appliances or plumbing on the premises," and expressly excepts the pre-requisites that the landlord have notice of the defect and fail thereafter to make the necessary repairs.

Paragraph 11 of the lease is not expressed as lucidly as one might like to see it expressed; however, we think by any objective test it spells out with sufficient clarity that the landlord has waived the requirement of notice in a situation such as presented by the facts of this case. *Ray v. Eurice,* 201 Md. 115, 126, 127, 93 A. 2d 272 (1952). We must also bear in mind that since the lease was prepared by the landlord's counsel that the accepted rule of construction of contracts requires that any ambiguity be construed against the party who prepared it. *Kelley Constr. Co. v. Sanitary Comm.,* 247 Md. 241, 250, 230 A. 2d 672 (1967).

Since the lease expressly dispenses with the necessity of the landlord's having received notice of a defect in the water pipe system, the only logical deduction this permits is, that the landlord himself would use reason-

able means to discover defects. This could only be accomplished by reasonable inspection. This exception in the lease regarding notice with reference to leakage from the water pipes, takes the case out of the scope of *Egge* and the *Restatement,* as it implicitly places on the landlord, at least, the duty of reasonable inspection, or the burden of the consequences should he choose to ignore the necessity for inspection. This brings us to a consideration of the language in Judge Grady's opinion wherein he states:

> "The terms of the contract, it seems to me, *place an obligation upon the landlord to have some effort made to inspect, or have some routine that might detect these conditions before the leak starts to do damage; and I find that no such schedule of inspection or no such routine was set up."* (Emphasis supplied.)

It is our opinion that the judgment of the lower court should be affirmed.

*Judgment affirmed, appellants to pay costs.*

SINGLEY, J., dissenting:

I agree with the majority's conclusion that paragraph 2 of the lease, which imposes on the landlord responsibility for keeping water and heating pipes in good order and repair will support a claim for damages caused by leakage of water, if the landlord has notice of the defect and has been given reasonable opportunity to make repairs. This is the rule of the cases on which the majority relies, *Sacks v. Pleasant,* 253 Md. 40, 251 A. 2d 858 (1969); *McKenzie v. Egge,* 207 Md. 1, 113 A. 2d 95 (1955); and *Robinson v. Heil,* 128 Md. 645, 98 A. 195 (1916), cited by the appellant; see also, 4 Thompson, *Real Property* (Perm. Ed.), § 1556.

I cannot join my colleagues in the conclusion that in this case, a landlord which had no notice and no oppor-

tunity to repair, must respond in damages. Their reading of paragraph 11 of the lease as imposing on the landlord an obligation tantamount to that of an insurer is, in my view unwarranted by the lease contract.

While the cause of the breakage was never explained, a reasonable inference can be drawn from the evidence that the pipe was broken during a weekend by the wilful or negligent act of an unidentified person who had or gained access to a portion of the premises leased to another tenant. To adopt the lower court's postulate that the landlord was under a contractual duty to "have some routine that might detect these conditions before the leak starts to do damage" would appear to impose on a landlord a duty which transcends traditional concepts of reasonable care, Restatement, *Torts 2d* (1965), § 357, Comment d and is virtually impossible of performance.

I readily concede that paragraph 11 of the lease is no model of lucidity, but in my view the obscurity is primarily caused by a mistake in punctuation, possibly the result of an error in transcription, and only minimally the result of inept phraseology.

I would read paragraph 11 in this fashion:

> "11. And, furthermore, that the Landlords shall not be liable for any loss of or damage to any property in or about the demised premises, which shall be brought about by other tenants or occupants of parts of the building [,] or any person or persons whomsoever [;] other than that resulting from falling plaster, steam, gas, electric, water, rain or snow which may leak from any part of said building or from the pipes, appliances or plumbing on the premises or from the street or subsurface, or from any other place or cause, *except and unless* the Tenants shall have given the Landlords prior notice in writing and the Landlords shall fail or neglect to make necessary repairs to or remedy the condition." (Emphasis supplied.)

It is, of course, the italicized phrase "except and unless" which is an unfortunate choice of words. I would read this "but only if", because it is clear to me that the condition contained in the last clause of the paragraph is intended to apply to the exception which follows the word "whomsoever".

It is perfectly apparent from the record that the tenant read the lease in this manner, since it went to great lengths to prove at trial that it had complained in writing about flaking paint, worms falling from woodwork, faulty radiators, broken windows, sprinkler failure and other leaks—none of which mounted up to compliance with the notice required by paragraph 11.

For these reasons, I would reverse the judgment entered below.