Annie Mae McCOY and Connie McCoy, Appellants,

v.

CORAL HILLS ASSOCIATES, INC., a corporation, and H. G. Smithy Company, Appellees.

No. 4596.

District of Columbia Court of Appeals.

Argued July 16, 1969.

Decided Feb. 4, 1970.

---

7. Arthur v. Superior Court, 62 Cal.2d at 409, 42 Cal.Rptr. at 444–445, 398 P.2d at 780–781.

8. Predecessor of 18 U.S.C. § 401 (1964).

**898**

William G. Applestein, Washington, D. C., for appellants.

Jerome S. Berg, Washington, D. C., for appellees. Lawrence E. Carr, Jr., and Louis M. Kaplan, Washington, D. C., also entered appearances for appellees.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

KELLY, Associate Judge.

This appeal is from a directed verdict in favor of the owner of an apartment building, Coral Hills Associates, Inc., and its managing agent, H. G. Smithy Company, in a negligence suit brought by tenants Connie and Annie Mae McCoy as the result of the collapse of the McCoys' living room ceiling. Appellants contend that the trial court erred in holding they failed to show that appellees had a duty to maintain the premises in a safe condition. We agree and order a new trial.

The triers of fact could have found the following from the testimony of appellants' witnesses: On August 30, 1963, the parties executed an agreement in Washington, D. C. for the lease of a second-floor apartment in the three-story apartment building located in suburban Maryland. Sometime prior to April 11, 1964, appellants noticed that small cracks began appearing in the surface of their living room ceiling. The condition of the ceiling became a source of concern for the McCoys when the living room ceiling in the apartment across the hall collapsed on May 11, 1964. That same day Mrs. McCoy notified the building manager that she wanted the cracks in her living room ceiling repaired. The manager inspected the ceiling but did nothing else. That evening Mr. McCoy wrote, and subsequently mailed, a letter to the Smithy Company's Washington, D. C., office requesting that the ceiling be repaired. When no response was received to this letter, Mr. McCoy hand-carried a similar letter to the same address on June 1, 1964. Appellees' property manager responded by inspecting the living room and declaring that the ceiling presented no danger. Ceilings in the apartment across the hall and the apartment next door were repaired by appellees and appellees' property manager testified that he was responsible for making necessary repairs. The McCoys' living room ceiling collapsed on October 25, 1964, allegedly causing the injuries upon which the suit is based.

▮ A tenant suing in tort must prove that the landlord owed him a duty to keep the premises in safe repair. At common law, the lessor surrendered both possession and control over the premises to the lessee and, in the absence of an agreement to the contrary, was not obligated to keep the premises in repair.[1] Appellants here contend that such an express covenant by the landlord to repair is contained in the following language of the lease agreement:

And the Tenant Does Hereby Further Covenant and Agree as follows: [T]hat the Landlord shall and may at all reasonable hours, without notice to the Tenant enter in and upon said premises to make necessary repairs, to protect the property from damage, and for all proper purposes. * * *

1. Sacks v. Pleasant, 253 Md. 40, 251 A.2d 858, 861 (1969).

Such a provision in a lease is not a covenant to repair under the law of the District of Columbia[2] and we doubt that it would be held to be so in Maryland.[3] However, we need not decide whether these words, or any other words contained in the lease agreement, create an express or implied duty on the part of the landlord to maintain the premises in a safe condition. A duty, or obligation of due care in tort, may be created by means other than contract. Here, the trial court should have submitted the case to the jury because the following portion of a housing ordinance promulgated by the Board of County Commissioners of Prince George's County, Maryland, and stipulated by the parties at pretrial, created a duty on the part of appellees to maintain the premises in such condition that a ceiling would not collapse on apartment occupants:

SECTION 2. Structure.

(A) Every dwelling shall be constructed of durable material capable of providing adequate protection from the elements and from excessive moisture. All parts thereof shall be kept in safe repair and structurally safe, free from excessive dampness and from rodent and insect infestation and fit for human habitation.[4]

In Whetzel v. Jess Fisher Management Co., 108 U.S.App.D.C. 385, 282 F.2d 943 (1960), the United States Court of Appeals for the District of Columbia Circuit held that District of Columbia Housing Regulations imposed a duty on a landlord to maintain a bedroom ceiling in a safe condition. We note, as did the court in *Whetzel*, that if an ordinance creates a duty or standard of care, then the violation of that ordinance is at least evidence of negligence. Likewise, the law of Maryland rejects the rule that the violation of a statute or ordinance is negligence *per se*,[5] and unless the facts admit of only one inference, questions as to whether the ordinance was violated—whether the duty was breached—and whether the violation was the proximate cause of the injury are questions for the trier of fact.[6]

The Maryland Court of Appeals has held that a landlord is obligated to maintain in safe repair stairways, passageways, and other portions of his property retained under his control for the use of all tenants.[7] And the repair of premises wholly demised to the tenant may also be the responsibility of the landlord under the express terms of the lease agreement or by the landlord's oral promise.[8] In Sezzin v. Stark, 187 Md. 241, 49 A.2d 742, 747 (1946), the Maryland Court of Appeals noted that a tenant who was injured in a fall through the glass bottom of an air and light shaft serving several apartments would have a proper cause of action if she could prove that the violation of a city ordinance, requiring the installation of wire screen guards around skylights, was

---

2. McKey v. Fairbairn, 120 U.S.App.D.C. 250, 253, 345 F.2d 739, 742 (1965).

3. Maryland law is applicable here. *See* Hall v. Hague, D.C.App., 257 A.2d 221 (1969); Hardy v. Hardy, D.C.App., 197 A.2d 923, 925 (1964).

4. Prince George's County, Md., Ordinance on the Hygiene of Housing, Proposal No. 309–B–1960, Resolution No. 223–B–1960, October 28, 1960.

5. McLhinney v. Lansdell Corp. of Md., 254 Md. 7, 254 A.2d 177, 181 (1969); Aravanis v. Eisenberg, 237 Md. 242, 259,

206 A.2d 148, 158 (1965). *See also* Farley v. Yerman, 231 Md. 444, 190 A.2d 773 (1963).

6. Sacks v. Pleasant, 253 Md. 40, 251 A.2d 858, 862 (1969); Norris v. Wolfensberger, 248 Md. 635, 237 A.2d 757, 761 (1968).

7. Langley Park Apartments, Sec. H., Inc. v. Lund, 234 Md. 402, 199 A.2d 620, 623 (1964); Elmar Gardens, Inc. v. Odell, 227 Md. 454, 177 A.2d 263, 265 (1962).

8. Sacks v. Pleasant, *supra* n. 6.

the proximate cause of her injuries. The same court, in Stein v. Overlook Joint Venture, 246 Md. 75, 227 A.2d 226, 230 (1967), held that a local building code provision requiring that a building owner "shall be responsible for the safe * * * maintenance of the building or structure and its exit facilities at all times" was admissible into evidence to show that an apartment building owner owed a duty to a tenant's guest to maintain exit facilities in a safe condition. In our judgment, a Maryland court would hold that the Prince George's County ordinance in this case created a duty on the part of appellee to maintain the McCoys' apartment in such condition that the ceiling would not collapse.[9] The McCoys are within the category of persons whom the ordinance was intended to protect and the injury here was of the nature of those the ordinance was intended to prevent. Further, the Maryland Court of Appeals has often held that a plaintiff is provided with a cause of action if his injuries are proximately caused by the violation of a statute or ordinance.[10] Necessarily included within

such a rule is the finding that the statute or ordinance created a duty, the violation of which creates the cause of action.

 Appellees note that the lease agreement contains a covenant whereby the "[l]andlord * * * shall not be liable for any damages to the Tenant for failure to repair or for any other act of nonfeasance. * * *" But this particular exculpatory clause is rendered invalid by Article 53, § 40, of the Maryland Code.[11] While a provision in the lease agreement permitting the landlord to enter upon the premises to make necessary repairs does not in itself create a duty to make all repairs, the reservation of a right by the landlord to enter and make necessary repairs indicates that both the landlord and tenant recognized that structural parts of the apartment, such as the living room ceiling, were not intended to be within the exclusive control of the tenant and therefore are not an exception to the operation of the statute.[12]

Reversed and remanded for a new trial.

9. Indeed, the testimony is that appellees assumed the duty of making repairs. *Cf.* Langley Park Apartments, Sec. H., Inc. v. Lund, *supra* n. 7.

10. State for Use of Parr v. Board of County Commissioners, 207 Md. 91, 113 A.2d 397, 402 (1955); Gosnell v. Baltimore & O. R. R., 189 Md. 677, 57 A.2d 322, 327 (1948); Sezzin v. Stark, 187 Md. 241, 49 A.2d 742, 748 (1946).

11. Any provision of a lease or other rental agreement relating to real property whereby a lessee or tenant enters into a covenant, agreement or contract, by the use of any words whatsoever, the effect of which is to * * * preclude or exonerate the lessor or landlord from any or all liability to the lessee or tenant, or to any other person, for any injury, loss,

damage or liability arising from any omission, fault, negligence or other misconduct of the lessor or landlord on or about the leased or rented premises or on or about any elevators, stairways, hallways, or other appurtenances used in connection therewith, and not within the exclusive control of the lessee or tenant, shall be deemed to be against public policy and void. Md.Code Ann., Art. 53, § 40 (1968 Replacement Volume). *See* Home Indemnity Co. v. Basiliko, 245 Md. 412, 226 A.2d 258, 260 n. 1 (1967).

12. *See* Whetzel v. Jess Fisher Management Co., 108 U.S.App.D.C. at 393, 282 F.2d at 951, where the court stated that " * * * the defective ceiling is a common wall with the floor of the apartment above, over which a tenant has virtually no control."